Commonwealth *v.* Robinette, Appellant.

Argued October 5, 1956. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and CARR, JJ.

■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■

*Richard W. Linton,* for appellant.

*Frank P. Lawley, Jr.,* Deputy Attorney General, with him *M. B. DeForrest,* District Attorney, and *Herbert B. Cohen,* Attorney General, for appellee.

OPINION BY ERVIN, J., November 13, 1956:

Lee Richard Robinette, also known as Richard Lee Robinette, Alfred Nardi, Jr., Kenneth Storm and Thomas DeArment were jointly indicted on two counts to No. 16 February Sessions, 1955, under the Act of June 24, 1939, P. L. 872, §302, 18 PS §4302. The first count of this indictment charged that on or about the 9th day of August, 1954, and prior thereto, the defendants, "being at the time inmates and prisoners of the Commonwealth of Pennsylvania at the Pennsylvania Institution for Defective Delinquents, and having been sentenced to the said Institution by competent courts of record in the Commonwealth of Pennsylvania, acting jointly and in pursuance of a common intent . . . did unlawfully and maliciously conspire to do certain . . . unlawful . . . acts, to wit: (1) to take and hold one Charles Robert Elder, a guard at the said Pennsylvania Institution for Defective Delinquents . . . as a hostage in order to effect an escape from the said Institution." The second count of this indictment charged that defendants unlawfully conspired to escape. The same defendants were indicted to No. 14 February Sessions, 1955 under the Act of June 24, 1939, P. L. 872,

as amended and supplemented by the Act of July 29, 1953, P. L. 1442, §1, 18 PS §4723.1. This indictment charged that on or about August 9, 1954 the defendants, "being at the time inmates and prisoners of the Commonwealth of Pennsylvania at the Pennsylvania Institution for Defective Delinquents and having been sentenced to the said Institution by competent courts of record in the Commonwealth . . . acting jointly and in pursuance of a common intent, did . . . unlawfully, willfully, feloniously, maliciously and by force, threats and intimidation, hold as a hostage one Charles Robert Elder, a guard at the said Institution . . . ." In addition, the defendant Lee Richard Robinette alone was indicted to No. 22, May Sessions, 1955 under a charge of prison breach under the Act of July 29, 1953, P. L. 1445, §1, 18 PS §4309.

On May 11, 1955, when the cases involving Robinette were about to be called for trial, counsel for defendant presented an application for the commitment of Robinette to "an institution or mental hospital for defective delinquents" and requested that proceedings on the indictments be continued. Trial of the cases was continued and on November 23, 1955 the court below appointed a commission to inquire into the mental condition of Robinette, as authorized by the Act of June 12, 1951, P. L. 533, Art. III, §345, and the Act of January 14, 1951-52, P. L. 2053, §11, 50 PS §1225. The commission held hearings and presented its report to the court below on December 6, 1955 in which it concluded, inter alia, that Robinette was not a mental defective within the meaning of the Mental Health Act. The court below adopted the findings of fact and conclusions set forth in the report of the commission[1]

---

[1] "Under The Mental Health Act of 1951, as under the prior Act of July 11, 1923, P. L. 998, it is expressly provided that the

and concluded that Robinette comprehended the existing situation, that he had the ability to make or aid his counsel in making a proper defense, and that he could communicate intelligently with his counsel.

The three indictments were consolidated for the trial of Robinette on December 13, 1955 who was found guilty on all charges by jury verdicts rendered on December 16, 1955. Motions for new trial and in arrest of judgment were overruled and on May 7, 1956 the defendant was sentenced to a period of not less than one nor more than two years on the one count of the conspiracy charge, and a period of not less than one nor more than two years on the other count of the conspiracy charge; to a period of not less than nine nor more than eighteen years on the charge of holding hostage; and, finally, to a period of not less than five, nor more than ten years, on the charge of prison breach. The sentences on the charge of conspiracy and the sentence on the charge of prison breach respectively were to run concurrently with the sentence on the charge of holding hostage. These appeals followed.

Appellant contends that the use of the word "sentenced" in each of the indictments was prejudicial in that it tended to make the jury think or believe that the defendant had been convicted, or had pleaded guilty to a criminal offense. This contention is without merit. The order of the juvenile court of June 9, 1949, offered by the Commonwealth and admitted into evi-

court, not the commission, must be satisfied that the defendant's mental condition is such as to require his commitment to a mental hospital. The report of the commission is advisory only: . . . ." *Com. v. Moon*, 386 Pa. 205, 125 A. 2d 594. In the present case the finding of the commission and the conclusion of the court were in accord. It could not be successfully argued that the lower court abused its discretion in adopting the report of the commission.

dence, was read to the jury. This order contained the following statement: ". . . . it is ordered and decreed after examination by two physicians that he [Robinette] be placed in the Pennsylvania Institution for Defective Delinquents." Also, in the order of commitment admitted into evidence the words "convicted of a crime" had been stricken out by the judge who signed the order so that the order classified the defendant as one "held as a juvenile delinquent." Moreover, any possible prejudice arising from the use of the word "sentence" in the indictments was overcome by the learned judge of the court below in his charge, wherein he stated: "Members of the jury, there is no evidence in this case that this defendant was ever convicted of any crime whatsoever. You should proceed with your deliberations on that basis."

Appellant next contends the evidence was insufficient to sustain the charges in the indictments. The lack of merit in this contention is well illustrated by the summary of the evidence contained in the able opinion of the learned judge of the court below which reads as follows: "The evidence discloses that commencing approximately one month prior to August 9, 1954, the defendants made plans to escape from the institution; that Robinette assisted in tying sheets together; that he helped to tie weights into the sheets; that the sheets were placed in a flour can in the bakery; that a part of the plan was to seize a guard, Charles Robert Elder, for the purpose of holding him as a hostage; that during the struggle between Nardi and the guard, when another inmate attempted to assist the guard, Robinette pushed him around and told him to mind his own business; that Nardi attacked the guard and stabbed him with a butcher knife; that Robinette mopped up the blood from the floor of the bakery and

washed with hot water the knife which had been used to kill the guard; that Robinette covered the deceased guard with a sheet and then brought the sheets with weights approximately twenty minutes later; that Nardi took keys from the body of the guard and unlocked the door; that Nardi succeeded in escaping entirely from the institution, and that Robinette and Storm climbed to the top wall of the F corridor where immediately prior to their apprehension, they were found tying sheets together, obviously in an effort to scale the final and outside wall. The statement made by Robinette and reduced to writing early in the evening of August 9, 1954 substantially corroborated the testimony presented by witnesses. There was ample evidence at the trial to sustain all charges made against Robinette."

Appellant specifically contends the evidence was insufficient to sustain the charge of conspiracy in that the defendant lacked the requisite mental capacity to be able to join in a plan or conspiracy. This contention is based on the fact that the order of the juvenile court committing the defendant to the Pennsylvania Institution for Defective Delinquents classified the defendant as a mental defective. It is also argued that the commission appointed by the court below to examine the defendant prior to trial found him to have some mental deficiency, though the commission found defendant not to be a mental defective within the purview of the Mental Health Act. However, the commission specifically concluded that the defendant knew the difference between right and wrong and in *Com. v. Krzesniak,* 180 Pa. Superior Ct. 560, 119 A. 2d 617, we held that when a defendant knows the difference between right and wrong, the fact of his relatively low mentality does not relieve him of criminal responsibility.

Equally without merit is the contention the court below erred in refusing to permit counsel for the defendant, on plea of surprise, to cross-examine his own witness on the matter of defendant's degree of suggestibility. Leonard J. Mack, Director of Training and Senior Psychologist at the Pennsylvania Institution for Defective Delinquents, testified at the trial that in his opinion defendant was a person of low suggestibility in August, 1954. At the hearing before the commission appointed by the court below to examine the defendant prior to trial there was introduced by this witness a psychiatric evaluation of the defendant by Dr. Orville M. Fitzgerald, who was the Assistant Commissioner of Mental Health. This evaluation contained the statement: "However, because of his suggestibility he could be led into anti-social acts." In his brief, counsel for appellant states: "The fact that the psychologist differed as to the suggestibility of this defendant from the opinion of Dr. Fitzgerald was something that had not occurred to Defendant's Counsel, since the opinion of Dr. Fitzgerald as to this point appeared to be submitted by the psychologist as the truth, even though he stated why he was presenting it." However, the testimony of Leonard Mack at the trial was not contradictory of his testimony before the commission. Nor was it in contradiction of any statement Mack made to defendant's counsel. Before ruling on counsel's leave to cross-examine his own witness the court below addressed the following question to defendant's counsel: "By the Court. Did you interview Mr. Mack, and did he tell you at the time of your interview with him that the defendant Robinette was a person of other than a person of low suggestibility in August? By Mr. Linton. No, I didn't ask him specifically." Under the circumstances the ruling of the

court below in refusing to allow defendant's counsel to cross-examine his own witness was proper.

Judgment and sentence affirmed.