**UNITED STATES of America**

**v.**

**Steven N. MASON.**

**Crim. No. K–75–0279.**

United States District Court,
D. Maryland.

Sept. 11, 1975.

Jervis S. Finney, U. S. Atty., Joseph M. Fairbanks and Robert A. Rohrbaugh, Asst. U. S. Attys., Baltimore, Md., for plaintiff.

Charles G. Bernstein, Federal Public Defender, Michael S. Frisch, Asst. Federal Public Defender, Baltimore, Md., for defendant.

FRANK A. KAUFMAN, District Judge.

The indictment in this criminal case contains the following two counts:

### First Count

The Grand Jury for the District of Maryland charges:

On or about the 17th day of January, 1975, in the State and District of Maryland,

STEVEN N. MASON

having been convicted on or about the 22nd day of March, 1966 in the Criminal Court of Baltimore, Maryland, of robbery, a felony, did knowingly receive, possess and transport in commerce and affecting commerce a firearm, that is, a Mossberg, Model 385–T, 20 gauge bolt action shotgun, serial number 680348.

18 U.S.C. § 1202(a)(1) App.

### Second Count

The Grand Jury for the District of Maryland further charges:

On or about the 17th day of January, 1975, in the State and District of Maryland,

STEVEN N. MASON

in connection with his acquisition of a firearm, that is, a Mossberg, Model 385–T, 20 gauge bolt action shotgun, serial number 680348, from Lee's Outdoor Store, 2037 West Pratt Street, Baltimore, Maryland, a licensed dealer of firearms, did knowingly make a false and fictitious written statement to the said Lee's Outdoor Store, which statement was likely to deceive the said Lee's Outdoor Store with respect to a fact material to the lawfulness of the said acquisition of said firearm by STEVEN N. MASON under the provisions of Chapter 44, Title 18, United States Code, in that STEVEN N. MASON represented that he had not been convicted by any court of a crime punishable by imprisonment for a term exceeding one year, whereas, in truth and fact, STEVEN N. MASON then knew that he had been convicted in the Criminal Court of Baltimore, Maryland, of robbery on the 22nd day of March, 1966, which crime is punishable by a term of imprisonment exceeding one year.

18 U.S.C. §§ 922(a)(6) & 924(a)

18 U.S.C. § 1202(a)(1) App. provides:

(a) Any person who—

(1) has been convicted by a court of the United States or of a State or any political subdivision thereof of a felony, * * *

and who receives, possesses, or transports in commerce or affecting commerce, after the date of enactment of this Act, any firearm shall be fined not more than $10,000 or imprisoned for not more than two years, or both.

18 U.S.C. § 922(a)(6) provides:

(a) It shall be unlawful—

\* \* \* \* \* \*

(6) for any person in connection with the acquisition or attempted acquisition of any firearm or ammunition from a licensed importer, licensed manufacturer, licensed dealer, or licensed collector, knowingly to make any false or fictitious oral or written statement or to furnish or exhibit any false, fictitious, or misrepresented identification, intended or likely to deceive such importer, manufacturer, dealer, or collector with respect to any fact material to the lawfulness of the sale or other disposition of such firearm or ammunition under the provisions of this chapter.[1]

## I

This case was submitted during a non-jury trial upon defendant's not guilty plea and upon agreed facts. The defendant admits that he knowingly took part in the January 1975 transaction, and that he was convicted of robbery, a felony, on March 22, 1966 in the Criminal Court of Baltimore. However, the question arises as to whether that 1966 conviction, which, if it had been obtained after the decision in *Long v. Robinson*, 436 F.2d 1116 (4th Cir. 1971), would have been so obtained in violation of the doctrine announced by *Long*, is a prior conviction upon which a conviction under 18 U.S.C. § 1202(a)(1) App. or under 18 U.S.C. § 922(a)(6) may be bottomed.

Before *Long*, Maryland by statute[2] provided for the trial of a sixteen or seventeen year old person in the Criminal Court of Baltimore as an adult, whereas a person in the same age bracket could only be tried as an adult in any of Maryland's twenty-three counties, *i. e.*, the rest of the State exclusive of Bal-

timore City, if the Juvenile Court of the county involved specifically waived jurisdiction to the adult criminal court. In *Long*, those statutory provisions with respect to Baltimore City prosecutions in the adult criminal court were held constitutionally violative of equal protection principles. Subsequently, in *Woodall v. Pettibone*, 465 F.2d 49 (4th Cir. 1972), *cert. denied*, 413 U.S. 922, 93 S.Ct. 3054, 37 L.Ed.2d 1044 (1973), Judge Craven held that *Long* was to be "retroactively applied" (at 52) but limited that retroactive application, insofar as the specific result in *Woodall* was concerned, to the 122 persons then known to be confined, paroled or on probation as a result of convictions obtained in violation of the doctrine of *Long*. In *Woodall*, the Fourth Circuit concluded that the expungement of a conviction obtained in contravention of *Long's* principles was "an equitable remedy to be granted in the balancing of the interests of the defendants and the state" (at 52), insofar as relief granted in *Woodall* was concerned, to those 122 persons. Even as to them the State was afforded "the opportunity, either in the Maryland courts or in the United States District Court, to establish nunc pro tunc that the Maryland Juvenile Court Judge would have, because of the facts and circumstances, waived jurisdiction to an adult court." (At 53). Judge Craven (at 51 n. 3) reviewed the threefold retroactivity test set forth in *Linkletter v. Walker*, 381 U.S. 618, 636, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), and in *Stovall v. Denno*, 388 U.S. 293, 297, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), *i. e.*, (1) the purpose of the new rule, (2) the extent of reliance on the old rule by law enforcement officials, and (3) the effect of retroactive application of the new rule on the administration of justice. He characterized (at 52) the denial to a juvenile in Baltimore City of his opportunity to op-

---

1. 18 U.S.C. § 924(a) provides, inter alia, for penalties for violation of its provisions and also of 18 U.S.C. §§ 921–928, inclusive.

2. 2B Md.Ann.Code art. 26, §§ 51–71 (1957).

pose in a juvenile court waiver by that court to an adult court—an opportunity available to all juveniles in all counties of Maryland other than in the courts of Baltimore City—as

* * * so fundamentally unfair as to impeach the validity of the "adult" proceedings[7] and render unreliable the

7. We do not think there would be an equal protection objection to treating all 16-year-old people as adults for purposes of criminal liability, nor would such treatment "shock the conscience." The constitutionally impermissible action is making criminal liability more likely for special groups without a rational reason. * * *

guilty verdicts obtained in these proceedings. * * *

The questions raised by the use for impeachment purposes in subsequent criminal proceedings in a Maryland court of convictions obtained in violation of *Long's* principles have been recently reviewed by the undersigned judge of this Court in *Douglas v. Warden,* 399 F. Supp. 1 (D.C.Md.1975), appeal noted to the United States Court of Appeals for the Fourth Circuit, and prior to *Douglas,* by Judge Harvey of this Court in *Lambert v. Maryland,* Civil No. H–74–404, decided March 7, 1975.[3] In *Douglas,* convictions obtained in trials held *before Long* were under attack because in those trials prior convictions, obtained in violation of *Long's* principles enunciated after those judgments of conviction had become final, were used for impeachment purposes. In *Douglas,* this Court refused to extend *Woodall's* retroactive application of *Long* to the *Douglas* situation. In *Lambert,* dealing with trials held *after Long* in which prior convictions obtained *after Long* in violation of *Long's* announced doctrine, were used for impeachment purposes, Judge Harvey held such use unconstitutional, though in *Lambert,* harmless error. Herein, the defendant's 1966 conviction was obtained *before Long* and

the trial herein was of course held *after Long.* Thus, in a sense, this case falls between *Douglas* and *Lambert.*

In *Dameron v. United States,* 488 F.2d 724 (5th Cir. 1974), relief was successfully sought by a petitioner proceeding under 28 U.S.C. § 2255 asking that his conviction under 18 U.S.C. § 922(g)(1) be voided because his earlier Arkansas conviction upon which his subsequent 922(g)(1) conviction was bottomed had been obtained upon "uncounseled guilty pleas" (at 725) in violation of *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). In *Dameron,* Judge Roney, after reviewing seemingly consistent positions taken by the Second, Seventh and Ninth Circuits in prior cases, concluded (at 727) that section 922(g)(1), as a matter of statutory construction,

* * * prohibit[s] the interstate transportation of firearms by those who have been *constitutionally* convicted of a felony. It is the fact of the conviction which Congress utilizes for classification purposes and the cases are legion which hold that a conviction in violation of *Gideon* is void, and not a conviction at all. It cannot be judicially used for any purpose.

* * *

The legal rationale of the retrospective application of *Gideon* may be theoretical in most instances, but the bedrock of the principle of retrospective application is that the defendant would not have been convicted if he had had counsel. Viewed in this way, it can be readily seen that, in the eyes of the law, the defendant, although convicted without counsel, would not have been a convicted felon with counsel, and therefore would not be in the prohibited status at the time of transportation. [emphasis in original; footnote omitted.]

In *Brown v. United States,* 483 F.2d 116 (4th Cir. 1973), Judge Russell, in

3. Copies of that opinion and of the *Douglas* opinion have been placed in the official court file herein.

the course of remanding a 28 U.S.C. § 2255 proceeding in which an attack was aimed at a sentence under a guilty plea because the federal district court had allegedly considered prior uncounseled state convictions in imposing sentence, discussed in some detail recidivist and other similar statutes and convictions resting on prior convictions. In so doing, Judge Russell wrote that the courts have not invalidated the prior conviction but rather "the recidivist conviction itself because the latter rests on evidence constitutionally invalid" (at 121) and that "the existence of a valid prior conviction is an essential element in the crime and has to be proved by the prosecution just like any other essential fact in the case." (At 121–22; footnote omitted). *See also Williams v. Coiner,* 392 F.2d 210, 212 (4th Cir. 1968), cited by Judge Russell in *Brown* at 121.

In *Douglas,* considerable attention was focused on the Supreme Court's development and application of the doctrine of *Gideon v. Wainwright, supra,* and (in *Douglas* at p. 5), the following summary is included:

> In *Burgett v. Texas,* 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967), the Supreme Court held that a conviction obtained in violation of *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), *i. e.,* a conviction obtained in a proceeding in which the defendant had not been afforded counsel, could not be considered valid as a prior conviction with relation to a subsequent prosecution involving a Texas statutory recidivist provision. "To permit a conviction obtained in violation of *Gideon v. Wainwright* to be used against a person either to support guilt or enhance punishment for another offense * * *," wrote Mr. Justice Douglas in *Burgett* (389 U.S. at 115, 88 S.Ct. 258), "is to erode the principle of that case." *Gideon* itself has been held

fully retroactive. *See, e. g., Kitchens v. Smith,* 401 U.S. 847, 91 S.Ct. 1089, 28 L.Ed.2d 519 (1971). *Burgett* was held fully retroactive in *Loper v. Beto,* 405 U.S. 473, 92 S.Ct. 1014, 31 L.Ed. 2d 374 (1972), decided March 22, 1972, four and one-half months before *Woodall* was decided August 8, 1972. In *Loper,* prior convictions seemingly invalid under *Gideon* had been used to impeach the credibility of the defendant. In his plurality opinion in *Loper,* Mr. Justice Stewart wrote (at 483, 92 S.Ct., at 1019):

> Unless Burgett is to be forsaken, the conclusion is inescapable that the use of convictions constitutionally invalid under *Gideon v. Wainwright* to impeach a defendant's credibility deprives him of due process of law.[12]

12. In the circumstances of this case there is little room for a finding of harmless error, if, as appears on the record now before us, Loper was unrepresented by counsel and did not waive counsel at the time of the earlier convictions. [Citations omitted.] * * *

Subsequently in *Douglas* (at p. 9), and after quoting Judge Craven's observation in n. 7 of *Woodall,*[4] this Court wrote:

> * * * Obviously then, convictions which offend *Long* differ considerably from those which offend *Gideon.* The latter are improper *per se,* while the former are improper only if and when other procedures are deemed to have been permitted to some, and denied to other, defendants who otherwise are alike. Accordingly, there is nothing inherently wrong with convictions which offend *Long.* On their own they do not violate any right of a defendant. In expressing those views this Court has not lost sight of Judge Craven's statement (at 52) in *Woodall* that "[t]o deny juveniles in Baltimore the opportunity of such a defense and to allow it to all other juveniles in

Maryland seems to us so fundamentally unfair as to impeach the validity of the 'adult' proceedings and render unreliable the guilty verdicts obtained in these proceedings. * * *" (Footnote omitted.) However, in so doing, Judge Craven was seemingly substantially tracking language which he had quoted earlier in *Woodall* (at 51) from *Williams v. United States*, 401 U.S. 646, 653, 91 S.Ct. 1148, 28 L.Ed. 2d 388 (1971), dealing with the tests to be applied in determining whether a constitutional ruling should be given retroactive effect,[5] and apparently was not considering the question of whether his ruling in *Woodall* should be given retroactive effect for purposes of voiding a later conviction obtained in a trial in which the earlier conviction, which under *Long's* subsequently announced doctrine, was erroneously used for impeachment purposes. * * * [Emphasis in original.]

Finally (at p. 11), this Court concluded in *Douglas:*

The question in issue here deals with the use of pre-*Long* convictions for impeachment purposes and not with the validity of those convictions themselves, and thus may appropriately be classified with those retroactivity cases "bearing on the use of evidence or on a particular mode of trial", *Robinson v. Neil*, 409 U.S. 505, 508, 93 S.Ct. 876, 35 L.Ed.2d 29 (1973); *see also Desist v. United States* [394 U.S. 244, 248–49, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969)] * * *, and *Linkletter v. Walker*, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), as opposed, for example, to a double jeopardy type of constitutional violation considered in *Robinson*. In *Robinson, Waller v. Florida*, 397 U.S.

387, 90 S.Ct. 1184, 25 L.Ed.2d 435 (1970), and its particular double jeopardy holding, was held retroactive. * * * As to Douglas, the current restraint upon his liberty cannot be ascribed solely to Douglas' pre-*Long* convictions, but rather to a conviction for another offense obtained in a jury trial presided over by Judge Liss which in and of itself was conducted with respect for principles of fundamental fairness.

The 1966 assault conviction of the defendant Mason is a conviction obtained, as Judge Craven wrote (at 52), pursuant to a "fundamentally unfair" procedure and by an adult court whose jurisdiction was nonexistent minus an appropriate juvenile court waiver. *Gideon* dealt with an uncounseled trial. *Long* struck down a conviction obtained by an adult court acting without jurisdiction,[6] though presumably on a basis considerably more fair than a criminal proceeding in which the defendant is uncounseled. Further, as noted in *Douglas, Long* rests on equal protection principles and does not, in spite of the cloud concerning the court's jurisdiction, involve as Judge Craven wrote (at 52 n. 7) "such treatment" as would "shock the conscience" or rest upon total lack of "a rational reason". Nevertheless, Judge Craven's use of the words "fundamentally unfair" (at 52) stands out. While those words do not equate in an absolute sense with the word "invalid", they are cousins— and warm, close cousins. Thus, the teachings of *Brown v. United States, supra*, and *Dameron v. United States, supra*, delivered in a *Gideon* context, would appear to require application in the within *Long* context. *Douglas* looked to the fairness of the challenged conviction despite the use for impeachment purposes in the obtention thereof of a con-

5. *See* the discussion *supra* at p. 621 of *Linkletter v. Walker*, 381 U.S. 618, 636, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965) and of *Stovall v. Denno*, 388 U.S. 293, 297, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).

6. *Greene v. State*, 11 Md.App. 106, 117, 273 A.2d 830 (1971).

viction which offended *Long's* principles. Herein, the prior conviction is not offered for impeachment use—but as evidence to establish an essential element of the alleged offense. The difference speaks for itself—and is one which, in this Court's opinion, is a valid one.

## II

There may be, however, a difference between the effect of *Long* and *Woodall* upon the first count herein under § 1202(a)(1) and the second count under § 922(a)(6), on the ground that an essential element of the former is a valid prior conviction, while, with regard to the latter, the essence of the offense is that the defendant filled out an application form and knowingly failed to disclose one or more of a number of material facts such as a prior felony conviction. Thus, it can be argued that even if a prior conviction rendered invalid by *Long* cannot support the within 1202(a)(1) prosecution, such a conviction can support the within 922(a)(6) conviction if the Government can prove that when the defendant filled out the application, he did not know that his pre-*Long* conviction was other than valid and thus made a false written statement.

█ Only persons who have been convicted of a felony can be convicted under § 1202(a)(1). Therefore, under that section the possession of a firearm is only a criminal offense if the individual has been so convicted. However, a prior conviction is not a necessary element of a conviction under § 922(a)(6). The elements of that offense which must be proven are only that an individual made a false statement of a fact material to the lawfulness of the sale of the firearm. Such material fact may be related to a prior conviction, but it also can be related to any one of a number of other answers to the questions on the firearms transaction application, such as the use of narcotics, dishonorable discharge from the United States Armed Forces, etc.[7] Therefore, while a conviction for a felony is a necessary element of a 1202(a)(1) conviction, it may be that in a given case it is not a necessary element of a 922(a)(6) conviction. Thus, while the Government in the 1202(a)(1) prosecution must in this Court's view prove a prior conviction which is constitutionally valid at the time of trial as a necessary element of its case, it can still be contended that the Government in a 922(a)(6) prosecution need only prove that the defendant knowingly made a statement (about his lack of prior conviction) which he believed to be false at the time he made it

7. That form as contained in the official court file in this case is reproduced, in part, below:

| 8. CERTIFICATION OF TRANSFEREE *(Buyer)* — An untruthful answer may subject you to criminal prosecution. Each question must be answered with a "yes" or a "no" inserted in the box at the right of the question: | | |
|---|---|---|
| a. Are you under indictment or information in any court for a crime punishable by imprisonment for a term exceeding one year? **NO** | d. Are you an unlawful user of, or addicted to, marihuana, or a depressant, stimulant, or narcotic drug? **NO** | |
| b. Have you been convicted in any court of a crime punishable by imprisonment for a term exceeding one year? (Note: The actual sentence given by the judge does not matter—a yes answer is necessary if the judge could have given a sentence of more than one year.) **NO** | e. Have you ever been adjudicated mentally defective or have you ever been committed to a mental institution? **NO** | |
| | f. Have you been discharged from the Armed Forces under dishonorable conditions? **NO** | |
| | g. Are you an alien illegally in the United States? **NO** | |
| c. Are you a fugitive from justice? **NO** | h. Are you a person who, having been a citizen of the United States, has renounced his citizenship? **NO** | |
| I hereby certify that the answers to the above are true and correct. I understand that a person who answers any of the above questions in the affirmative is prohibited by Federal law from purchasing and/or possessing a firearm. I also understand that the making of any false oral or written statement or the exhibiting of any false or misrepresented identification with respect to this transaction is a crime punishable as a felony. | | |

and which was false except for the possible effect of *Long* upon the prior conviction. The fact that the defendant's statement was only false if the constitutional invalidity of a prior conviction, or of a prior dishonorable discharge or the like, is disregarded could be said to be of no importance.[8] However, in view of this Court's conclusions in Part V *infra,* with regard to the variance issue which must be reached herein as to the 1202(a)(1) count regardless of whether or not there is any difference between the 1202(a)(1) and the 922(a)(6) charges with regard to the *Long-Woodall* issue analyzed *supra,* it is not necessary to resolve in this case the question raised in this Part II.

### III

Assuming that the defendant is in no weaker position herein in connection with the 922(a)(6) count than under the 1202(a)(1) count, and treating both counts as posing the same issue, the question arises as to whether the Government should be afforded herein the opportunity suggested by Judge Craven in *Woodall* (at 53) to ask this Court to put itself in the shoes of the Baltimore City juvenile court as of the time of the prosecution of the 1966 case which resulted in the 1966 pre-*Long* conviction and to determine if that juvenile court would have waived jurisdiction under the facts and circumstances then known. One of the difficulties with that argument is that in *Franklin v. State,* 264 Md. 62, 67, 285 A.2d 616 (1972), then Chief Judge Hammond wrote that an adult Maryland criminal court had no jurisdiction to try a defendant within the sixteen to eighteen age bracket unless and until the juvenile court itself had waived its jurisdiction. *Franklin* was, however, decided before *Woodall* and is cited therein. Accordingly, this Court, in the wake of *Woodall,* proceeds on the basis that the Government, if it were necessary, should be afforded the right to show that Mason's 1966 pre-*Long* conviction could be validated at this time and should not be held to be invalid until and unless the Government, has failed to shoulder its burden of proving validity in the manner suggested by Judge Craven in *Woodall* (at 53). But, again, because of this Court's conclusions as set forth in Part V *infra,* there is no need herein to afford that opportunity to the Government.

### IV

Defense counsel in this case spotted the *Long* problem before trial, but did not make it known to this Court or to government counsel, neither of whom were aware of the issue, until, inadvertently, at the commencement of trial, one of defense counsel, to utilize his own words (T. Tr. 9), let the cat "out of the bag". In fairness to defendant and his counsel who were simply trying to cooperate with this Court and government counsel "in the interest of moving things [the case] along" (T. Tr. 9), this Court in this opinion treats this case as if:

(1) the Government had put on its entire case and had closed it after pro-

---

8. *Cf. Mays v. Harris,* 523 F.2d 1258 (4th Cir. Aug. 25, 1975), in which the Fourth Circuit reversed the grant by the District Court of a writ of habeas corpus. The District Court had invalidated Mays' conviction as an habitual offender under Virginia's motor vehicle law because two of the four underlying convictions were invalid under an retroactive application of *Argersinger v. Hamlin,* 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972). The Fourth Circuit (at p. 1259) reversed "because the sentence about which Mays complains does not depend on the validity of his underlying convictions." Rather, Judge Craven wrote that "Mays was convicted and sentenced, therefore, not because he was an adjudged habitual offender, but because he wilfully and flagrantly violated an extant court order." (at p. 1259.) The Court held (at p. 1260) that "[t]o permit one who has been adjudged an habitual offender to disregard his status, however vulnerable, and later defend any conviction for doing so by asserting the invalidity of his underlying convictions is to allow him to judge his own case."

ducing evidence that all elements of a 1202(a)(1) offense and of a 922(a)(6) offense had been offered along with the evidence, embodied in a government exhibit, that Mason was under eighteen years of age when he was convicted of robbery in a Maryland adult criminal court on March 22, 1966; and as if—

(2) the defendant had then, at the close of the Government's case, moved for a judgment of acquittal under Federal Criminal Rule 29 on the grounds that the 1966 robbery conviction was invalid under *Long* and that the record did not reveal that a juvenile court hearing and waiver of jurisdiction had occurred prior to that 1966 adult criminal proceeding and conviction.

Initially, the question arises as to whether the defendant or the Government has the burden of proving, or at least of going forward to produce evidence of, that lack of waiver. If the defendant has any such obligation, then defendant's said motion to acquit at the close of the Government's case would necessarily have failed.

In a number of cases, the denial or alleged denial of the right to counsel in a criminal proceeding resulting in an underlying conviction which itself was subsequently used for purposes of imposing a recidivist sentence or of establishing an element of the crime, as in a conviction relating to firearms, has been the basis of a challenge to the subsequent conviction in a habeas corpus proceeding. In such a setting, *i. e.*, a habeas corpus proceeding, the burdens of going forward and of proof must seemingly be borne by the petitioner. *Clayton v. Haynes*, 517 F.2d 577 (4th Cir. 1975), referring to *Loper v. Beto*, 405 U.S. 473, 92 S.Ct. 1014, 31 L.Ed.2d 374 (1972); *Kitchens v. Smith*, 401 U.S. 847, 91 S.Ct. 1089, 28 L.Ed.2d 519 (1971) and *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed.2d 1461 (1938). However, *Burgett v. Texas*, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967), indicates that the allocation of burden is

different in a trial itself in which an essential element is proof of an underlying valid conviction. In *Burgett*, the Supreme Court reviewed a Texas conviction under a recidivist statute in a case in which the evidence produced by the prosecution established that the underlying convictions had occurred in proceedings in which the defendant had not been represented by counsel. In reversing, Mr. Justice Douglas wrote (at 114–15, 88 S.Ct. at 262): "Presuming waiver of counsel from a silent record is impermissible." Those words have been read by Judge Russell in *Brown v. United States*, 483 F.2d *supra* at 121, to mean that "when the record of a prior conviction * * * is silent as to the presence of counsel, it is presumed that the Sixth Amendment rights of the defendant have been violated." In *Losieau v. Sigler*, 406 F.2d 795 (8th Cir.), *cert. denied*, 396 U.S. 988, 90 S.Ct. 475, 24 L.Ed.2d 452 (1969), in which the habeas corpus petitioner sought to set aside a Nebraska habitual criminal sentence, Judge Heaney wrote (at 802–03):

> Ordinarily, the burden of proof is on an accused to establish that he was denied the right to counsel. * * * [Citations omitted.] *Burgett v. State of Texas*, supra, raises serious questions, however, as to whether an accused has such a burden where the record is silent as to the presence of counsel at a critical stage. [Footnote omitted.]

> \* \* \* \* \* \*

We are inclined to believe that *Burgett* must be read as holding that where the record is silent as to whether an accused was furnished counsel at a critical stage and where the accused introduces evidence tending to show that he was not in fact so represented, the burden then shifts to the state to prove, by a fair preponderance of the evidence, that the accused was represented. * * *

In *United States v. Thoresen*, 428 F.2d 654 (9th Cir. 1970), on direct appeal

from a conviction under 18 U.S.C. § 1202 (a) App.,[9] the Ninth Circuit considered a federal firearms conviction based upon a prior Maine conviction which the defendant challenged, *inter alia,* as uncounseled. Judge Hamley held (at 664), in the course of remanding for further trial, that defendant "was entitled to an opportunity, at the trial [in the federal District Court in the District of California], to establish the invalidity, under the Constitution, of the Maine conviction * * *." Writing in *United States v. DuShane,* 435 F.2d 187 (2d Cir. 1970), involving the same statute as in *Thoresen* and an underlying 1959 Oklahoma conviction challenged on the basis that defendant had not waived his right to counsel, Judge Feinberg, after reviewing and analyzing *Burgett,* and also in the course of remanding for further trial, wrote (at 190) that "once DuShane established that he had been without counsel in 1959, the burden was then on the Government to prove waiver * * *" and (at 191) referred to that government burden as a "heavy burden". In *United States v. Lufman,* 457 F.2d 165, 166–67 n.2 (7th Cir. 1972), Judge Kiley, in reversing a 1202(a) conviction, wrote:

> The docket entries of the 1938 conviction are silent as to whether the defendant was represented by counsel, although the defendant submitted an affidavit below stating that he was not represented by counsel and was not advised that he had a right to counsel. The government argued below that "[s]ince the record of defendant's prior felony conviction neither substantiates nor contradicts the defendant's contention the government demands that defendant be held to strict proof of his allegations and that he carry the burden of proof which he

has in the first instance. *See Johnson v. Zerbst,* 304 U.S. 458, 469, 58 S.Ct. 1019, 82 L.Ed.2d 461 (1938)."

This is incorrect. Once a defendant raises the constitutional invalidity of a prior conviction, the government has the heavy burden of proving absence of constitutional defect or waiver of rights. *United States v. DuShane,* 435 F.2d 187, 189–190 (2nd Cir. 1970). When the record of a prior conviction is silent as to the presence of counsel, it is presumed that the Sixth Amendment rights of the defendant have been violated. The government must affirmatively prove otherwise. *Carnley v. Cochran,* 369 U.S. 506, 516, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962); *Burgett v. Texas,* 389 U.S. 109, 114, 115, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967); *Oswald v. Crouse,* 420 F.2d 373 (10th Cir. 1969); *Losieau v. Sigler,* 406 F.2d 795 (8th Cir. 1969). *See United States ex rel. Baldridge v. Pate,* 371 F.2d 424 (7th Cir. 1966). As the Court in *Burgett* added, "Presuming waiver of counsel from a silent record is impermissible." (389 U.S. 114–115, 88 S.Ct. 262).

In the case at bar evidence introduced by the Government established that Mason's 1966 conviction was invalid under *Long* and *Woodall* unless shown by the Government to be valid under the "resuscitation" opportunity seemingly afforded by *Woodall* to the Government. Adopting the approach suggested analogously by *DuShane and Lufman,* and proceeding on the basis indicated at (1) and (2) at pp. 626–627, *supra,* it would appear that defendant is entitled to the grant of his motion for acquittal unless the Government should (a) be given the opportunity to establish, and (b) can successfully establish factually and with legal significance, Mason's guilt under

---

9. That code section, which today reads differently, at that time provided:

> It shall be unlawful for any person who is under indictment or who has been convicted of a crime punishable by imprisonment for a term exceeding one year or who is a fugitive [sic] from justice to ship, transport, or cause to be shipped or transported in interstate or foreign commerce any firearm or ammunition.

one or both counts in this case by proving that Mason was convicted in the Circuit Court for Anne Arundel County, Maryland, on September 14, 1970 of a felony, namely, escape, at a time when the defendant was 21 years of age. By pure chance, one of the exhibits which the Government sought to introduce, and which, the defendant has not disputed, the Government at all times planned to introduce at trial during the Government's direct case reveals that escape conviction. Further, several other such government-introduced exhibits establish the defendant's birthdate and thus his age in 1970. Defense counsel, however, contends that any revelation in any government exhibit disclosing the escape conviction would have been objected to by defense counsel and would have been held by this Court to be inadmissible as irrelevant and prejudicial in a 1202(a)(1) and 922(a)(6) trial in which only Mason's 1966 conviction was mentioned in each of the two counts of the indictment. Defense counsel further stresses that, in the absence of government counsel's awareness of the *Long* point, government counsel would not have had any valid basis upon which to resist during the Government's direct case such a defense objection and such a court ruling. That position would appear sound in the context of the way the Government's direct case would almost surely have developed and concluded, had the "cat not gotten out of the bag." The evidence of the 1970 conviction or of any other crimes committed by the defendant Mason does not fall within any of the recognized exceptions to the rule, *see United States v. Woods*, 484 F.2d 127, 133 (4th Cir. 1973), *cert. denied*, 415 U.S. 979, 94 S.Ct. 1566, 39 L.Ed.2d 875 (1974); McCormick on Evidence § 190 at 448–51 (ed. 1972), that evidence of other crimes is not admissible to prove that an accused is a bad person and therefore likely to have committed the crime in question. Absent any notion of the *Long* issue government counsel in this case, having bottomed the charges in the indictment only upon Mason's 1966 conviction, would not have been likely to have sought to introduce Mason's 1970 conviction as proof of an essential element of the 922(a)(6) and 1202(a)(1) charges. The Government, in the face of a Rule 29 acquittal motion by defendant made at the close of the Government's case, would thus have been required to ask this Court to permit it to reopen the case and to introduce evidence of defendant's 1970 escape conviction.

In *United States v. Duran*, 411 F.2d 275, 277 (5th Cir. 1969), the trial court's exercise of discretion to permit the Government to reopen after the case had gone to the jury was affirmed. *See also Lucas v. United States*, 343 F.2d 1, 2–3 (8th Cir., *cert. denied*, 382 U.S. 862, 86 S.Ct. 125, 15 L.Ed.2d 100 (1965); 3 L. Orfield, Criminal Procedure Under the Federal Rules § 26:216–18 (1966). *Cf. Gormley v. United States*, 167 F.2d 454, 458 (4th Cir. 1948).

That this Court would have exercised such authority in this case in either a non-jury or a jury trial if the Government had asked this Court so to do in order to enable the Government to introduce evidence of the defendant's 1970 conviction is, in the mind of this Court, clear beyond a reasonable doubt. A criminal trial is not just a battle of wits, and the Court's discretionary right to permit the prosecution to reopen exists to permit justice to prevail and not to be aborted as it might be herein if evidence of the 1970 conviction was not presented simply because the Government originally chose the wrong underlying felony committed by Mason. Therefore, this Court is as certain as it can be that it would in any event have permitted the Government so to reopen and to establish, for purposes of proving under both the 1202(a)(1) and the 922(a)(6) charges in this case, the essential element of a prior valid felony conviction by introducing evidence to show

that Mason was convicted in 1970 of the felony of escape at a time when he was over 18 years of age and was clearly prosecutable in a Maryland adult court upon that charge. Thus, as far as this Court is able to determine, this case would always have reached the ultimate question discussed in Part V *infra,* at least with regard to the Count One 1202 (a)(1) charge, regardless of whether defense counsel had or had not "let the cat out of the bag". That ultimate question is whether there are fatal variances between the charges in both counts of the indictment resting upon Mason's 1966 robbery conviction, and those same charges bottomed upon Mason's 1970 escape conviction.[10]

### V

The test to be applied in determining whether a variance between the proof at trial and the allegation in the indictment is or is not fatal was stated by the Supreme Court in *Berger v. United States,* 295 U.S. 78, 82, 55 S.Ct. 629, 630, 79 L. Ed. 1314 (1935):

> \* \* \* The true inquiry, therefore, is not whether there has been a variance of proof, but whether there has been such a variance as to "affect the substantial rights" of the accused. The general rule that allegations and proof must correspond is based upon the obvious requirements (1) that the accused shall be definitely informed as to the charges against him, so that he may be enabled to present his defense and not be taken by surprise by the evidence offered at the trial; and (2) that he may be protected against another prosecution for the same offense. \* \* \* [Citations omitted.]

In *Berger,* the indictment charged a single conspiracy of Berger with seven other persons to utter counterfeit Federal Reserve Notes. Mr. Justice Sutherland commented (at 80, 55 S.Ct. at 630) that "the evidence \* \* \* tended to establish not a single conspiracy as charged but two conspiracies"—and that "[t]he only connecting link between the two was that [a conspirator other than Berger] \* \* \* was in both conspiracies and the same counterfeit money had to do with both." While reversing because of rather extreme prejudicial prosecutorial misconduct during trial, Mr. Justice Sutherland concluded (at 84, 55 S.Ct. at 631) that the variance was "not prejudicial and hence not fatal" after noting (at 83, 55 S.Ct. at 631) the lack of prejudice to Berger or surprise on Berger's part because of the variance, and the availability to him of the "defense of \* \* \* former conviction \* \* \* if he should again be prosecuted."

In *Stirone v. United States,* 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960), the defendant was indicted under the Hobbs Act, in connection with his having caused sand to be transported in interstate commerce into Pennsylvania for the making of concrete in Pennsylvania. Over objection by the defense, "the trial judge charged the jury that so far as the interstate commerce aspect of the case was concerned, Stirone's guilt could be rested either on a finding that (1) sand used to make the concrete 'had been shipped from another state into Pennsylvania' or (2) 'Mr. Rider's concrete was used for constructing a mill which would manufacture articles of steel to be shipped in interstate com-

---

10. Regardless of whether Mason's 1966 conviction was valid at the time of his escape in 1970, that escape from confinement "under color of law" constituted an offense under Maryland law. *Vucci v. State,* 18 Md.App. 157, 305 A.2d 483 (1973); *Jennings v. State,* 8 Md.App. 321, 325, 259 A.2d 547

(1969). Federal case law teaches similarly. *United States v. Franklin,* 440 F.2d 1210, 1212 (7th Cir. 1971); *United States v. Haley,* 417 F.2d 625, 626 (4th Cir. 1969); *Laws v. United States,* 386 F.2d 816, 817 (10th Cir.), *cert. denied,* 390 U.S. 1007, 88 S.Ct. 1252, 20 L.Ed.2d 107 (1967).

merce . . .' from Pennsylvania into other States. * * *" (At 214, 80 S. Ct. at 272.) Reversing, Mr. Justice Black wrote (at 215–18, 80 S.Ct. at 272):

Whether prospective steel shipments from the new steel mills would be enough, alone, to bring this transaction under the Act is a more difficult question. We need not decide this, however, since we agree with the dissenting judges in the Court of Appeals that it was error to submit that question to the jury and that the error cannot be dismissed as merely an insignificant variance between allegation and proof and thus harmless error as in *Berger v. United States*, 295 U.S. 78 [55 S.Ct. 629, 79 L.Ed. 1314]. The crime charged here is a felony and the Fifth Amendment requires that prosecution be begun by indictment.

Ever since *Ex parte Bain*, 121 U.S. 1 [7 S.Ct. 781, 30 L.Ed. 849] was decided in 1887 it has been the rule that after an indictment has been returned its charges may not be broadened through amendment except by the grand jury itself. In that case, the court ordered that some specific and relevant allegations the grand jury had charged be stricken from the indictment so that Bain might be convicted without proof of those particular allegations. In holding that this could not be done, Mr. Justice Miller, speaking for the Court, said:

"If it lies within the province of a court to change the charging part of an indictment to suit its own notions of what it ought to have been, or what the grand jury would probably have made it if their attention had been called to suggested changes, the great importance which the common law attaches to an indictment by a grand jury, as a prerequisite to a prisoner's trial for a crime, and without which the Constitution says 'no person shall be held to answer,' may be frittered away until its value is almost destroyed." 121 U.S. 1, 10 [7 S.Ct. 781, 30 L.Ed. 849].

The Court went on to hold in *Bain*:

"that after the indictment was changed it was no longer the indictment of the grand jury who presented it. Any other doctrine would place the rights of the citizen, which were intended to be protected by the constitutional provision, at the mercy or control of the court or prosecuting attorney . . . ." 121 U.S. 1, 13 [7 S.Ct. 781, 30 L.Ed. 849].

The Bain Case, which has never been disapproved, stands for the rule that a court cannot permit a defendant to be tried on charges that are not made in the indictment against him. * * * [Citations omitted.] Yet the court did permit that in this case. The indictment here cannot fairly be read as charging interference with movements of steel from Pennsylvania to other States nor does the Court of Appeals appear to have so read it. The grand jury which found this indictment was satisfied to charge that Stirone's conduct interfered with interstate importation of sand. But neither this nor any other court can know that the grand jury would have been willing to charge that Stirone's conduct would interfere with interstate exportation of steel from a mill later to be built with Rider's concrete. And it cannot be said with certainty that with a new basis for conviction added, Stirone was convicted solely on the charge made in the indictment the grand jury returned. Although the trial court did not permit a formal amendment of the indictment, the effect of what it did was the same. And the addition charging interference with steel exports here is neither trivial, useless, nor innocuous. * * * [Citations omitted.] While there was a variance in the sense of a variation between pleading and proof, that variation here destroyed the defendant's substantial right to be tried

only on charges presented in an indictment returned by a grand jury. Deprivation of such a basic right is far too serious to be treated as nothing more than a variance and then dismissed as harmless error. Compare *Berger v. United States*, 295 U.S. 78 [55 S.Ct. 629, 79 L.Ed. 1314]. The very purpose of the requirement that a man be indicted by grand jury is to limit his jeopardy to offenses charged by a group of his fellow citizens acting independently of either prosecuting attorney or judge. Thus the basic protection the grand jury was designed to afford is defeated by a device or method which subjects the defendant to prosecution for interference with interstate commerce which the grand jury did not charge. [Footnotes omitted.]

A sampling of some of the opinions of the federal courts of appeals discloses how *Berger* and *Stirone* have been applied.

In *Heisler v. United States*, 394 F.2d 692, 694 (9th Cir.), *cert. denied*, 393 U.S. 986, 89 S.Ct. 463, 21 L.Ed.2d 448 (1968), a variance between an indictment charging the passing and uttering with intent to defraud of a twenty dollar United States obligation and proof at trial relating to a ten dollar United States obligation was held by the Ninth Circuit not to be fatal. Pointing to Federal Criminal Rule 52(a) which in part provides—

> Harmless Error. Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded * * *,

Judge Duniway noted (at 694) that the Supreme Court's opinion in *Berger* "preceded the adoption of the rule in 1946" and concluded that "the variance here did not affect substantial rights of Heisler. The offense would be the same regardless of the denomination of the note. * * * There could have been no surprise or prejudice. And the particulars given in the indictment are sufficient to protect against double jeopar-

dy. * * * " In *Heisler*, the trial judge had permitted the amendment of the indictment. Frankly expressing great difficulty and some degree of puzzlement in the light of the doctrine of *Bain* establishing "that any substantial amendment to the body of an indictment renders the conviction void * * * " (at 695) and citing *Stirone* on a "see also" basis, Judge Duniway held the amendment "harmless" in the context of Heisler's non-jury trial.

In *United States v. Cowley*, 452 F.2d 243 (10 Cir. 1971), the Tenth Circuit declined to hold a variance fatal where the indictment and proof at trial concerned possession of shotguns of different sizes, stating (at 247):

> * * * A variance is not fatal *unless the defendant could not have anticipated* from the indictment what the proof would be, or unless a conviction on the indictment would not bar a subsequent prosecution for the same offense. * * * [Citation omitted.]

Under the facts of this case neither of these possible bases of prejudice were present. Cowley knew exactly what gun he was charged with possessing, and count one provided sufficient detail as to the offense charged so that conviction thereon necessarily barred a subsequent prosecution for the same offense. [Emphasis supplied.]

The Third Circuit in *United States v. Somers*, 496 F.2d 723 (3d Cir.), *cert. denied*, 419 U.S. 832, 95 S.Ct. 56, 42 L.Ed. 2d 58 (1974), indicated considerable caution before affirming a Hobbs Act conspiracy conviction in which the indictment charged that extortion occurred " 'between on or about January 1, 1970 and July 31, 1970 * * *' "; the prosecutor advised defense counsel before trial that the Government's proof would show that "acts occurred 'between on or about January 1, 1970 and on or about July 3, 1970 * * *' "; and the proof at trial referred to occurrences in "late 1968", "early * * * 1969", and

"April of 1970" (at 743). The Court (at 743–46), however, wrote:

> To evaluate the legal significance of Somers' contention, it is first necessary to trace the decisional law relevant to disparities between proof and indictment.

> In *Ex Parte Bain*, 121 U.S. 1, 7 S. Ct. 781, 30 L.Ed. 849 (1886), the Supreme Court held that the striking of terms in an indictment by a trial court denied defendants (felons) their constitutionally protected right to be tried only upon charges returned by a grand jury. Since a grand jury might base its indictment upon terms stricken by a trial judge, the Supreme Court established a *per se* rule against judicial amendments to the terms of an indictment.

> A less rigid stand has been taken with respect to *variances* between the terms in an indictment and the evidence established at trial. Rather than adopt a *per se* rule, the Supreme Court has developed a case-by-case approach for analysis of variances. In both *Berger v. United States*, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935), and *Kotteakos v. United States*, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946), the Supreme Court announced that variances would constitute reversible error only in those cases in which variances actually prejudice the defendant. *Berger* and *Kotteakos* suggest that the focus for variances is on the fairness of the trial, as opposed to the emphasis on pleading requirements suggested by *Ex Parte Bain.*

> This dichotomy between the treatment of variances and amendments was clouded somewhat by *Stirone v. United States*, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960). In *Stirone*, the indictment charged a Hobbs Act offense relating to interference with the interstate transportation of sand. Both the proof at trial and the jury instructions permitted conviction on an alternate theory (namely, interference with shipments of concrete to a mill that would eventually produce steel which would move in interstate commerce). In finding this variance to be reversible error, the Court's analysis more closely paralleled the *per se* test of *Bain* than the *Berger-Kotteakos* focus upon trial prejudice. The Court emphasized that the variance related to one of the essential elements in a Hobbs Act offense, the relationship to interstate commerce. Rather than speculate on the intent of the grand jury with regard to such an important factor, the Court vacated the conviction.

> We do not read *Stirone* as mandating the *Bain per se* test for all variances. Rather, *Stirone* merely identifies one type of variance as constituting a "constructive amendment" and then applies the stricter *per se* approach, applicable to amendments since *Ex Parte Bain*. The variance in *Stirone* was substantial: while the indictment specified one offense (interference with the interstate transportation of sand), the evidence demonstrated a completely different offense (interference with the interstate transportation of steel). The modification in the elements of the crime presented a substantial likelihood that *Stirone* may have been convicted of an offense other than that charged by the grand jury. The *per se* approach utilized in both *Bain* and *Stirone* is designed to protect against this possibility.

> Thus, in evaluating variances, we must first determine whether there has been a modification in the elements of the crime charged. * * * [Citations omitted.] If such a modification exists, we will apply the *per se* rule of *Stirone* so as to preserve the shielding function of the grand jury. If, on the other hand, the variance does not alter the elements of the offense charged, we will focus upon

whether or not there has been prejudice to the defendant, as in *Berger* and *Kotteakos*. \* \* \* [Citations omitted.]

Appellant Somers contends that we are bound by *United States v. Critchley*, 353 F.2d 358 (3d Cir. 1965) to apply the *per se* approach in the instant case. In *Critchley*, a Hobbs Act indictment charged defendants with committing extortive acts "on October 7 and 8, 1962." The proof at trial disclosed no such activity on the dates specified, but did disclose that extortive threats were made on August 10 and October 5, 1962. On the basis of *Stirone*, this Court held that the threats proven could not be used to support the jury verdict of guilty. We declared:

> The Supreme Court has indicated that indictments charging violation of the Hobbs Act must be narrowly construed. . . . [T]his Court cannot allow the Government to prove interference with interstate commerce by threats made on October 5, 1962, and approximately one week earlier, when the indictment charged interference with interstate commerce by actions of the defendant on October 7 and 8, 1962.

353 F.2d at 362.

*Critchley*, however, may be distinguised from the instant case. Unlike the general language in the indictment before us (charging that the extortion occurred *between on or* about January 1 and July 31, 1970), the *Critchley* indictment restricted the relevant time frame to two specific dates. To the extent that *Critchley* adopted a *per se* rule, we limit it to situations in which the grand jury identifies specific dates for an offense. In such situations, it is reasonable to assume that the grand jury was indicting the defendant for acts occurring on the specific dates charged. Where, however, the grand jury speaks in more general terms, this assumption fails. By the use of the qualifying phrase "on or about", the grand jury indicates its unwillingness to pinpoint the date of the offense charged. We will not particularize by a *per se* rule what the grand jury leaves vague. Accordingly, we reject the contention that our precedent binds us to a *per se* approach.

Congress has not identified time as an essential element of either a Hobbs Act or Travel Act offense. In the absence of such an identification, proof of the acts charged on any date within the statute of limitations and before the return date of the indictment is sufficient to support a conviction. \* \* \* [citations omitted]; *United States v. Covington*, 411 F.2d 1087, 1088–1089 (4th Cir. 1969) \* \* \* [other citations omitted]. We conclude, therefore, that the time variance alleged by Somers does not constitute a modification of the elements of the crime charged. Unlike the situation in *Stirone*, the variance herein does not undermine our confidence in the belief that the defendant was convicted of the crime charged by the grand jury. A *per se* approach to the variance is therefore precluded.

We must, instead, determine whether the time variance prejudiced Somers. In making such a determination, we normally focus upon two issues:

> a. Is there a danger that as a result of the variance, Somers may be prosecuted a second time for the same offense?
>
> b. Was Somers so surprised by the proof adduced that he was unable to prepare his defense adequately?

*See Berger v. United States*, 295 U.S. 78, 82, 55 S.Ct. 629, 79 L.Ed. 1314 (1935). We find nothing in the record or in Somers' brief on appeal to suggest that the time variance will cause double jeopardy problems for the appellant. Accordingly, we re-

strict our inquiry to the second of the issues posed above. [Emphasis in original; footnotes omitted.]

The *Somers* Court then reviewed the trial testimony and developments and held (at 746) "that Somers was not prejudiced by the time variance."

In *United States v. Covington*, 411 F. 2d 1087 (4th Cir. 1969), the Fourth Circuit held that there was a substantial but not a fatal variance between an indictment which alleged interstate transportation of a stolen vehicle on or about December 27, 1966 and the Government's evidence at trial which tended to show the car was transported during the first week of July 1966. Judge Craven wrote (at 1089) that the defendant was not in jeopardy of further indictment for the same offense since

> * * * we held in *Tincher v. Boles*, [364 F.2d 497, 498 (4th Cir. 1966)] that "any prosecution under a subsequent indictment would be foreclosed if the offense charged was one which would have supported a conviction under the earlier indictment." 364 F.2d at 498. The transcript of Covington's trial is available and, should it ever be necessary to do so, it may readily be determined from that transcript whether a newly charged offense was one "which would have supported a conviction under the earlier indictment." Moreover, enough of the facts are narrated here to afford protection, and it seems unlikely that Federal Second will soon disappear.

The Court also concluded that the defendant was not prejudiced in his preparation for trial since the time of the transportation was not in issue.

> * * * Defendant's theory at trial was that he was innocent because of his ownership of the alleged stolen vehicle. He never questioned the element of transportation in July 1966. This is not a case where the time of the alleged offense was disputed at trial. Had that been the situation, a

claim of fatal variance prejudicing the preparation of a defense might have been valid. [Footnote omitted.]

In *Moore v. United States*, 512 F.2d 1255, 1256 (4th Cir. 1975), the Fourth Circuit in a two-to-one per curiam opinion held that the defendant was not prejudiced by the variance between the indictment which alleged possession of a sawed-off shotgun and the proof at trial which showed possession of another type of firearm. Specifically, "[t]he indictment charged that Moore possessed a 'sawed-off 12 gauge shotgun * * *'" whereas "[t]he weapon introduced at trial * * * was certified to be a '[f]irearm made by inserting a 11 inch piece of galvanized pipe into barrel of flare gun and welding same with solder. The pipe is of the size that will chamber a 12 gauge shotgun shell.' [sic]". The indictment was seemingly brought under 26 U.S.C. § 5845(d) which defines "firearm" to include a "shotgun" "designed or redesigned * * * and intended to be fired from the shoulder * * *." The majority opinion states (at 1256):

> * * * Because his weapon clearly was never intended to be fired from the shoulder, Moore contends it is not a "shotgun" and therefore not a "firearm" proscribed by Section 5861. This argument overlooks the further definition of "firearm" as "any other weapon" which means "a pistol or revolver having a barrel with a smooth bore designed or redesigned to fire a fixed shotgun shell . . . . "

Moore, however, suggests that reliance on the provision for "any other weapon" creates a fatal variance between the indictment and the proof at trial. Nevertheless, it is clear that he was in no way prejudiced by the variance in the instant case. Prior to trial, defense counsel was supplied with a copy of the Treasury Department Certification, which fully described the modified flare gun. Thus, the indictment is most properly read

as charging possession of an unlawful firearm; the faulty description is mere surplusage.

Dissenting from the majority opinion subscribed to by Chief Judge Haynsworth and by Judge Butzner, Judge Widener concluded (at 1256) "that the government simply indicted the defendant under the wrong statute \* \* \* ", *i. e.*, section 5845(d) defining "shotgun", instead of section 5845(e) defining "any other weapon", and that the defendant was in fact prejudiced thereby and by the testimony at trial. Judge Widener wrote (at 1257–58) that—

> \* \* \* this case falls within the reasoning of *Ex Parte Bain*, 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed. 849 (1887); *Stirone v. United States*, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960); and *Russell v. United States*, 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962). Cf. *Berger v. United States* 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935).

In *United States v. Quicksey*, 525 F.2d 337 (4th Cir. 1975), Judge Butzner wrote (at p. 337):

> Grady Quicksey, the only defendant charged with substantive offenses, contends that there was a fatal variance between the dates of the offenses alleged in the indictment and the dates disclosed by the evidence in Counts II, IV, V, and VI. He also complains of a variance in Count IX which charged he violated the Travel Act in July 1972 by having an accomplice travel between New York and West Virginia to promote a narcotics business involving heroin. The principal witness to this transaction was the accomplice, who testified that the drug she transported for Quicksey was cocaine, not heroin. No other witness identified the drug.
>
> Rule 52(a) of the Federal Rules of Criminal Procedure requires us to disregard a variance which does not affect substantial rights of the accused.

The test of substantiality is found in *Berger v. United States*, 295 U.S. 78, 82, 55 S.Ct. 629, 79 L.Ed. 1314 (1935), which requires:

> "(1) that the accused shall be definitely informed as to the charges against him, so that he may be enabled to present his defense and not be taken by surprise by the evidence offered at the trial; and (2) that he may be protected against another prosecution for the same offense."

*Berger* also teaches that if, upon examination of the entire record, the variance does not appear to have caused prejudice, the error must be regarded as harmless.

The record discloses no prejudice. The transactions mentioned in Counts II, IV, V, and VI could be readily identified from other allegations without reference to the exact dates. Thus, Quicksey was fairly apprised of the charges. Furthermore, the record depicts the offenses in such unique detail that he is protected from subsequent prosecutions for the same crimes. The district judge committed no error by denying motions for a judgment of acquittal because of the variance in the dates. *Cf. United States v. Covington*, 411 F.2d 1087 (4th Cir. 1969).

Similarly, we find no prejudice in the variance between the allegation of heroin and proof of cocaine in Count IX. Both drugs are narcotics. The gist of the charge in Count IX is engaging in interstate travel to promote a narcotics business. The type of narcotics is immaterial, unless Quicksey was misled and taken by surprise or unless he could not be protected against subsequent prosecution.

Count IX fully informed Quicksey of the specific offense with which he was charged by allegations that named his accomplice and described the interstate travel as taking place between

West Virginia and New York. The evidence disclosed that this was the only trip of this nature made by the accomplice, that heroin and cocaine in the form in which they were transported are similar in appearance, and that Quicksey did not even mention the name of the drug when he commissioned its transportation for his narcotics business. Thus, it is apparent that Quicksey was fully informed of the material details of the interstate travel for which he was charged, and that the trip was so unique that he could not be prosecuted again for the same offense. We conclude, therefore, that no prejudice has been shown and that no error was committed in denying his motion for a judgment of acquittal on Count IX because of the variance. *Cf. United States v. Ramirez,* 482 F.2d 807, 817 (2d Cir. 1973); *United States v. Schrenzel,* 462 F.2d 765, 769 (8th Cir. 1972). [Footnote omitted.]

Chief Judge Haynsworth, dissenting on another ground, concurred as to what Judge Butzner had so written.

The offenses with which Mason is charged under §§ 1202(a)(1) and 922(a)(6), *i. e.,* unlawful possession of a firearm and making a material, false statement in purchasing a firearm, are the precise offenses for which he is convicted pursuant to this opinion. Proof that Mason had been convicted of a felony before he purchased or possessed the firearm is an essential element herein of both crimes. The use of one prior conviction, not referred to in the indictment, as opposed to another prior conviction which is referred to in both counts thereof, to prove an element of

those crimes does not change either offense. Accordingly, the variance would not appear to be a constructive amendment as in *Stirone.* Yet it must be said that the line between *Stirone* and *Berger* is hardly a sharp, precise one. Rather that line, despite the clear articulation in those opinions, is seemingly necessarily somewhat shrouded in mist —a mist which together with certain of the strict tests since adopted by one or more of the federal courts of appeal (*see, e. g.,* the discussion *supra* of *Heisler* and *Somers*) makes it somewhat difficult in some given cases to determine on which side of the line the case falls. But the emphasis in all of the cases and the Fourth Circuit's approach to date is upon the elements of prejudice and of protection against future prosecution.

■■ No variance is a fatal one if the defendant is not prejudiced by not having been able adequately to prepare his defense or by being subject to future prosecutions for the same offense. Mason, however, has in no way been prejudiced in the preparation of his defense since the trial was continued and defendant was given the opportunity to prepare and present any defense available to him. Mason is also protected against further prosecutions for the same offenses by the record and the judgments and the within opinion in this case.[11] Therefore, this Court concludes that the reference to Mason's 1966 conviction in the indictment and the proof at trial of Mason's 1970 conviction to prove the necessary factual element of a valid underlying, prior conviction do not constitute a fatal variance.

11. A number of the cases in which variances have been held non-fatal rather summarily conclude, with little or no discussion or citation of authority, that the defendant would be protected by the record in the case from further prosecution for the same offense. Seemingly, that result has been thought obvious where the defendant has not been prejudiced in his defense and the variance has not been deemed otherwise so substantial as to require a holding of fatality. *See, e. g., United States v. Quicksey, supra* (at p. 337); *United States v. Cowley,* 452 F.2d *supra* at 247; *United States v. Covington,* 411 F.2d *supra* at 1089.

## VI

■■ At one point in this case the question arose as to whether Mason's 1970 escape conviction was valid under *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), in view of the fact that Mason was not represented by counsel in that proceeding. That fact did not appear one way or the other in the Government's presentation of evidence before closing its direct case. It would appear that a defendant must at a minimum raise the absence of counsel issue after the Government has introduced evidence of a valid conviction in a case in which the Government must prove a prior conviction as one of the essential elements of the alleged offense. *See* the discussion in IV, *supra.* But even if the Government, in the absence of the defendant raising the issue of an uncounseled underlying prior conviction, has the burden of proving the validity of such prior conviction, there seemingly would have been no reason in this case, regardless of how this case was or could have been tried, not to permit the defendant and/or the Government to reopen, and to give to the party or parties having the burdens of going forward and/or of proof the appropriate opportunity to produce relevant and material evidence as to the validity of the prior conviction. *See* the discussion in IV, *supra.* Counsel for defendant has nevertheless objected to any reopening of the record after the Government rested. That objection is overruled for reasons set forth *supra.* On a secondary basis, without in any way waiving his rights to continue to press that objection, defendant has conceded that the record of the 1970 trial in which he was convicted of escape clearly establishes that defendant voluntarily and knowingly waived his right to counsel in that proceeding. That concession is amply justified and fully supported by the record of Mason's said 1970 trial.

## VII

This Court concludes that the Government has established all elements of both the 1202(a)(1) and 922(a)(6) offenses as charged by utilizing (a) Mason's 1970 escape conviction, rather than his 1966 robbery conviction, and (b) the record of Mason's 1970 escape trial. Accordingly, the verdicts of guilty which have heretofore been entered are, for the reasons set forth in this opinion, hereby confirmed.