## Commonwealth v. Storm, Appellant.

Argued October 9, 1957. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

*Richard W. Linton,* for appellant.

*M. B. DeForrest,* District Attorney, with him *Frank P. Lawley, Jr.,* Deputy Attorney General, and *Thomas D. McBride,* Attorney General, for appellee.

OPINION BY WOODSIDE, J., January 21, 1958:

These are appeals from the judgments of sentence entered on charges of conspiracy and prison breach in Huntingdon County.

The appellant, Kenneth Storm, an inmate at the Pennsylvania Institution for Defective Delinquents, was convicted by a jury of prison breach and of conspiracy to hold a guard as a hostage, and of conspiracy to escape. He was tried and acquitted on the charge of holding a guard as a hostage.

Storm was one of four inmates of the institution who conspired to escape and, with varying degrees of complicity, committed numerous crimes connected therewith, including murder of one of the guards. As the circumstances of the offenses have no bearing upon these appeals, it is not necessary to relate them. They were outlined by Judge ERVIN in *Commonwealth v. Robinette,* 182 Pa. Superior Ct. 346, 126 A. 2d 495 (1956) when the case of one of the appellant's co-conspirators was before us.

The present appellant was less seriously involved than Nardi, who was convicted of murder, and Robinette. The sentences of appellant were from one to two years on each count of conspiracy and from four and a half to nine years on prison breach. Judge HIMES directed all sentences to run concurrently, and to commence August 9, 1954, the date Storm was put into close confinement.

The appellant contends that Section 309 of The Penal Code of 1939 as amended by the Act of July 29, 1953, P. L. 1445, 18 PS §4309, under which he was prosecuted, does not apply to inmates of the Pennsylvania Institution for Defective Delinquents. This section provides:

"Any person undergoing imprisonment who breaks prison and escapes, or shall break prison although no escape is actually made, is guilty of prison breach, a felony, and, on conviction thereof, shall be sentenced to undergo imprisonment, by separate and solitary confinement at labor, for a term not exceeding ten (10) years.

. . .

"The word 'imprisonment', as used in this section, means actual confinement in any penal or correctional institution located in this Commonwealth, or any restraint by lawful authority pursuant to a court order or after conviction of any crime."

Did the legislature intend to include the Pennsylvania Institution for Defective Delinquents among the "penal or correction institution" referred to in the above definition of imprisonment? We think it did.

The Pennsylvania Institution for Defective Delinquents was created by the Act of May 25, 1937, P. L. 808, section 1, 61 PS §541-1, "as a place for the reception, care, maintenance, detention, employment, and training of defective delinquents who have been con-

victed of crime, and who may hereafter be committed to said institution by the courts of this Commonwealth . . ." It is an institution for the confinement and treatment of a particular type of criminals and delinquents. The legislature has placed it under the Bureau of Corrections in the Department of Justice, and has treated it in the Administrative Code and elsewhere as one of the penal and correctional institutions of this Commonwealth.

In *Commonwealth v. Robinette,* supra, although the question was not specifically raised, we affirmed the judgment of sentence upon the assumption that the Pennsylvania Institution for Defective Delinquents is a correctional institution.

The appellant contends that even if the Pennsylvania Institution for Defective Delinquents is a correctional institution, the conviction must be set aside because he was illegally committed to the institution in the first instance. He was committed by the Juvenile Court of Monroe County when he was fourteen years old. Although that court had jurisdiction of his person and authority to commit him to *an* institution, it lacked authority to commit him to the Pennsylvania Institution for Defective Delinquents at Huntingdon because Section 3 of the Act of May 25, 1937, P. L. 808, as amended by the Act of June 20, 1947, P. L. 672, 61 PS §541-3, provides for the admission to that institution of any male person *over the age of fifteen years* who was convicted of crime before any court, or is held as a juvenile delinquent by any juvenile court and is mentally defective.

It is not necessary for us to decide whether the commitment became legal on the appellant's fifteenth birthday or whether his commitment at the time of the commission of the offenses here in question was legal or illegal.

Even though one be confined under a commitment which would be reversed or set aside on appeal, or writ of habeas corpus, nevertheless, if he "breaks" the institution he is guilty of prison breach. In *Commonwealth ex rel. v. Francies,* 73 Pa. Superior Ct. 285, 289 (1919), the Court said: "The courts have jurisdiction to impose a sentence of imprisonment in the penitentiary for breaking, or escaping from, either the penitentiary or the jail. The escape is a substantive offense, and the punishment thereof is not merely incidental to the punishment for the offense for which the prisoner may have been confined. Defendants in criminal cases are now entitled to appeal, as matter of right, in every case in which there has been an error in a sentence to imprisonment. They are not, however, entitled to raise any question as to the regularity of the sentence by breaking the jail or the penitentiary, as such a proceeding frequently involves danger to the lives of the officers of the prison."

In *Commonwealth v. Ramsey,* 1 Brewster 422 (1867), the Court said concerning a federal prisoner convicted of escaping from a state prison: "If in our prison for an indictable offence, he has no more right to break its walls than he would have to break the jailer's head. 'Since all are bound to submit to the judgment of the law, whoever escapes from it by artifice or contrivance is guilty of a high contempt, punishable with fine and imprisonment:' 2 Haw. P.C.C. 1705 . . .

"His counsel has urged that the defendant was unjustly confined upon the commitment of the United States Commissioner, and that he applied again and again for a trial without success . . . All of these matters are foreign to this inquiry, for it was well observed by Judge DARLINGTON, in his elaborate opinion in Commonwealth v. Miller, 2 Ash. 64, that 'under

many circumstances those who are actually innocent may be lawfully imprisoned, and they ought to submit themselves until they are delivered by due course of law.' " See also *Commonwealth ex rel. Stimeling v. Day*, 5 Cumberland L. J. 189 (1955).

Even when the original order of commitment had been set aside, both this Court and the Supreme Court have refused a writ of habeas corpus to one serving a sentence for prison breach committed while serving the illegal commitment. *Commonwealth ex rel. Penland v. Ashe*, 142 Pa. Superior Ct. 403, 17 A. 2d 224 (1941); and 341 Pa. 337, 19 A. 2d 464 (1941).

Judgments affirmed.