394 A.2d 1004

COMMONWEALTH of Pennsylvania ex rel. Albert A. FORD

v.

Glen R. JEFFES, Superintendent, State Correctional Institute, Dallas, Pa., and Robert P. Kane, Attorney General of Pa., State Capitol Building, Harrisburg, Pa., and William B. Robinson, Commissioner of Corrections at Camp Hill, Pa.

Appeal of Albert A. FORD.

Superior Court of Pennsylvania.

Submitted June 12, 1978.

Decided Nov. 22, 1978.

Francis P. Burns, Assistant Public Defender, Wilkes-Barre, for appellant.

Michael H. Garrety, Deputy Attorney General, Harrisburg, for appellees, Jeffes, Kane and Robinson.

Patrick J. Toole, Jr., District Attorney, Wilkes-Barre, for appellee, Luzerne County.

Before JACOBS, President Judge, and HOFFMAN, CERCONE, PRICE, VAN der VOORT, SPAETH and HESTER, JJ.

PER CURIAM:

This is an appeal from the order of the Court of Common Pleas of Luzerne County denying a petition for a Writ of Habeas Corpus by a prisoner, the appellant, in the State Correctional Institution at Dallas.

The appellant is a two time murderer who is presently serving a life sentence in prison. The prison authorities have confined him in a restricted area of the prison. Appellant claims that his confinement there is cruel and unusual punishment and seeks to be released into the general prison population.

The court below in dismissing the writ relied heavily on the able opinion of Judge R. Dixon Herman of the Third District of the United States District Court which is attached hereto for reference.

The court below in its opinion found as facts that the treatment of the prisoner as disclosed by the hearing did not shock the conscience of the court or otherwise violate the standard of fundamental fairness as measured by the evolving standards of contemporary society and that the treatment afforded the petitioner cannot be classified as cruel and unusual punishment from the credible testimony taken at the hearing so that the petitioner did not sustain his burden of proof.

His civil rights have most certainly been protected in both the State and Federal courts and no further judicial time should be expended on his behalf. The problem of his incarceration raises serious problems for the prison administration as he can be better guarded in solitary confinement than in the general population as the nature of his offenses and sentences make him a high escape risk. This places a great burden on the prison authorities to protect society from this felon who has nothing to lose from further killing.

The Federal case in question involved the petitioner in a civil rights action seeking injunctive relief, being *Ford v. Jeffes, et al.,* Civil No. 75–575 (Memorandum Opinion filed November 17, 1976) which dealt with the same facts as the instant case. Judgment was entered in favor of the defendants and a new trial denied.

Although Habeas Corpus is available to challenge prison conditions constituting cruel and unusual punishment, *Commonwealth ex rel. Bryant v. Hendrick,* 444 Pa. 83, 280 A.2d 110 (1971), even though the detention itself is proper, *Bryant, Id.,* 444 Pa. at page 90, 280 A.2d at 113 added an important caveat:

"We do not mean to indicate by our present ruling that it is the function of the courts to superintend the treatment and discipline of prisoners in penal institutions. This is the responsibility of those in charge of the prison itself and those officers, both state and local, who are given supervisory powers. We also emphasize that habeas corpus should not be entertained on the slightest pretext or merely to correct prison conditions which can be reme-

died through an appeal to prison authorities or to an administrative agency. But, we do mean that where the conditions of confinement are so cruel and callous as the evidence in the present case establishes, the courts may grant relief through habeas corpus in order to protect the petitioner's fundamental and basic rights."

The court emphasized that the conditions must indeed be shocking to the conscience. The court below found that from the evidence produced at the hearing this burden was not sustained. We agree, after a careful study of the evidence presented at the hearing. The hearing judge remains the independent finder of facts and "his estimates as to the credibility of witnesses and the weight of their testimony are conclusive in the absence of the clear abuse of discretion." *Commonwealth ex rel. Kitchen v. Burke,* 175 Pa.Super. 597, 601, 107 A.2d 193, 195 (1954).

In *Bryant,* supra, the Supreme Court made it clear that only in rare circumstances should the writ be granted to remedy prison conditions. In that case the testimony established the following:

". . . cells which were built to house one man were being used for two or more inmates; rainwater leaked into the cells, soaking the bed coverings; the cells were infested with cockroaches and rats; blankets were sometimes kept for six months at a time and became filthy; mail between prisoners and attorneys was censored, there was an insufficient number of guards, and they were inadequately trained; the prison was unsafe, as inmates were subjected to assaults, weapons, narcotics traffic and theft; the medical staff was inadequate; guards beat and abused inmates mercilessly." *Id.* 444 Pa. at 94, 280 A.2d at 116.

The conditions in the BAU at SCI–Dallas do not even approach those which were in issue in *Bryant,* supra, notwithstanding Ford's vague, conclusory testimony to the contrary. At the conclusion of the hearing, the court stated that a second hearing would be scheduled, if necessary, but on July 21, 1977, the court below issued its opinion and order

denying the petition. The court, in effect, ruled that Ford failed to come forward with sufficient evidence to show cruel and unusual punishment which would require the respondents to present a defense although they had planned to do so. The notes of testimony contain no suggestions by counsel for Ford to call other witnesses or to introduce additional evidence. The court felt that further hearing was unnecessary. We do not believe that a remand is required when the petitioner has already presented his evidence in the state and federal courts and been denied relief.

It should be pointed out as a further reason not to remand that circumstances have changed since the hearing in that Ford has been assigned to what is known as S–2 Block, which although more restrictive than general population, is less restrictive than S–1 Block. Ford contended at the hearing that he wanted to be released to general population and felt that S–2 would be no improvement over S–1. The Attorney General contends: "Prison officials, however, should at least be permitted to show that his current custody status and conditions of confinements are not violative of constitutional standards. Indeed the action may well be moot."

Ford's witnesses seemed to stress visiting conditions and the inconvenience of travelling to Dallas. One of the witnesses concluded that Ford's opportunities for educational and vocational training were very restricted. Ford, himself testified:

". . . that the dimensions of his cell are approximately five by eight by ten feet, and that it is furnished with a bed, mattress, sink, and toilet. From his cell he cannot see other inmates although he can speak with them. He is permitted out of his cell twice each day—up to two hours for exercises and for showers. He leaves his cell for visits. It is fair to characterize the remainder of his testimony as a long string of vague, conclusory statements about conditions in the BAU.

"According to Ford, conditions have become 'more tolerable' since the denial of relief in federal court. Access to

the law library has diminished. His cell is searched on occasion and 'legal materials are destroyed.' He is subject to searches of his person on a daily basis. Visitation problems have gotten worse. A representative from his faith of Islam visits the BAU but not very often. He was dissatisfied with a psychological evaluation prepared by the institution's psychologist, Dr. Krasno. On two occasions foreign material was found in his food. He is indigent and cannot afford to buy books and educational materials. Threats have been made against him. His eyesight has deteriorated. He does not have access to radio or television. He was not supplied pork-free meals. Guards interfered with his mail. He is 'constantly in threat of violence'.

"Superintendent Jeffes was called to the stand by Ford, and his testimony dealt with the reasons for the inmate's continued incarceration in the BAU. The Superintendent noted the difficulties in preparing a total treatment plan for Ford due to his failure to co-operate with the staff. The institution did not have sufficient information available to evaluate his chance for successful adjustment to general population. The Superintendent stated that Ford would be moved to S–2 block upon completion of additional psychological testing, but that up to that point in time he was unwilling to agree to such testing. Moreover, Ford is not the only inmate who has been required to undergo further psychological evaluation prior to release to general population."

Ford's claim of cruel and unusual punishment was squarely rejected in 1976 in his federal civil rights actions. The issues raised there were identical to the case at bar although the opinion in the federal case was filed November 17, 1976. The court below was free to disbelieve Ford's vague and factually unsupported statements.

Order affirmed.

HESTER, J., concurs in the result.

HOFFMAN, J., did not participate in the consideration or decision of this case.