401 A.2d 1166

**COMMONWEALTH of Pennsylvania**

v.

**Paul S. STANLEY, Appellant.**

Superior Court of Pennsylvania.

Submitted June 23, 1977.

Decided April 12, 1979.

Petition for Allowance of Appeal Granted August 6, 1979.

Spaeth, J., filed dissenting opinion.

196

198

200

John W. Packel, Assistant Public Defender, Chief, Appeals Div., Philadelphia, for appellant.

Steven H. Goldblatt, Assistant District Attorney, Chief, Appeals Div., Philadelphia, for Com., appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

PRICE, Judge:

The instant appeal arises from appellant's conviction of the crimes of escape,[1] possession of instruments of escape,[2] possession of an instrument of crime,[3] and carrying a prohibited offensive weapon.[4] Appellant was acquitted of the charges of possession of a concealed weapon[5] and possession of a firearm by a former convict.[6]

The facts giving rise to this appeal are as follows. On May 28, 1975, appellant was convicted of first degree murder. On October 1, 1975, he was taken to the Philadelphia General Hospital and placed in a cell in the hospital's prison ward. Later that day it was discovered that appellant had escaped through a window from which the bars had been cut. Appellant and two others solicited a ride from an individual named Dominick Stella, who deposited them at various locations throughout the city of Philadelphia. Stella

1. 18 Pa.C.S. § 5121.

2. 18 Pa.C.S. § 5122.

3. 18 Pa.C.S. § 907(a).

4. 18 Pa.C.S. § 908.

5. 18 Pa.C.S. § 907(b).

6. 18 Pa.C.S. § 6105.

noticed that when the three exited his automobile they left behind a hacksaw blade partially wrapped in tape. The next day he recognized appellant's photograph in the newspaper and reported the incident to the police.

A few days later, a woman named Jacqueline Keim told a man named Carmen Sperduto that appellant was at her apartment. Sperduto saw a newspaper item detailing appellant's escape and telephoned the police telling them that he had seen appellant and might know where appellant was. Based upon this tip, the police obtained an arrest warrant. On October 3, 1975, they forcibly entered Keim's apartment and discovered appellant hiding in a bedroom under a child's crib. In addition, they seized a revolver that was lying on top of a dresser, a few feet from the crib. After conviction, appellant brought the instant appeal alleging that the court below committed the following errors:

(1) the lower court erred in not granting his motion to suppress the revolver;

(2) the lower court erred in not sustaining his demurrer to the firearms charges because the Commonwealth failed to prove that appellant was in possession of the revolver found in the bedroom in which he was captured;

(3) his conviction under 18 Pa.C.S. § 907(a) should be reversed because a revolver does not constitute an instrument of crime;

(4) the Commonwealth failed to establish one of the elements of escape;

(5) the court erred in not permitting appellant to introduce evidence of the conditions at the Philadelphia prison as a defense to the charge of escape;

(6) the lower court erred in permitting the prosecution to introduce evidence regarding appellant's prior conviction for first degree murder;

(7) the court erred in permitting the prosecutor to amend the information to charge the offense under 18 Pa.C.S. § 6105.

For the reasons stated below, we affirm the judgment of the court below.

## I–IV

The majority of this court embraces the analysis in the dissenting opinion regarding the first four assignments of error and, therefore, we will not expound upon those assignments.

## V

Appellant's fifth assignment of error is that the court below erred in excluding evidence regarding the conditions at the Philadelphia prison as a defense to the charge of escape. While agreeing with the lower court that the evidence was properly excluded, we wish to make clear our position on the use of duress as a defense to an escape charge.

Generally, Pennsylvania has refused to recognize a defense to a charge of escape based upon an illegality in one's sentence or incarceration.[7] The reason for this rule is obvious—the difficulties of prison administration would be intolerable if each prisoner was permitted to "go over the wall" as a means of testing the legality of his incarceration, rather than utilizing the customary means of administrative and judicial redress.[8]

The general prohibition against escape defenses is, however, not absolute. At common law, a defense of necessity was recognized for factors beyond the control of the prisoner.[9] Moreover, the defense of duress was recognized

7. *See* 18 Pa.C.S. § 5121(c); *Commonwealth v. Storm*, 185 Pa.Super. 136, 138 A.2d 140 (1958); *Commonwealth ex rel. Penland v. Ashe*, 142 Pa.Super. 403, 17 A.2d 224 (1941); *Commonwealth v. Francies*, 73 Pa.Super. 285 (1919).

8. This court has also held that neither the negligence of prison officials in permitting an escape, nor the necessity of a prisoner to attend to certain family matters will suffice as a defense to an escape charge. *See Commonwealth v. Longenberger*, 261 Pa.Super. 472, 395 A.2d 1006 (1978); *Commonwealth v. Schwartz*, 251 Pa.Super. 36, 379 A.2d 319 (1977).

9. "If the prison be fired by accident, and there be a necessity to break prison to save his life, this excuseth the felony . . . ." 1 Hale, History of the Pleas of the Crown, 611 (1680).

as part of the common law of Pennsylvania, *see Respublica v. M'Carty*, 2 Dall. 86, 1 L.Ed. 300 (1781) (dicta), and has been incorporated as a statutory defense under the Crimes Code, 18 Pa.C.S. § 309. Therefore, the issue for determination is whether duress will be recognized as a defense to the crime of escape.

 While of novel inquiry in Pennsylvania, courts in other jurisdictions have determined that the defense should be recognized, although they have disagreed at to what constitutes duress. The greatest source of disagreement has arisen with respect to whether the physical abuse of a prisoner by prison officials or other prisoners constitutes duress which justifies an escape,[10] or whether such abuse merely relates to the "conditions" of imprisonment which should be remedied by a proper protest to prison or judicial officials.[11] Although not directly presented in the instant case,[12] we hold that such abuses are analogous to cases in which a prisoner is contesting the legality of his incarceration. Mere prison conditions, even those arising from physical abuse, will not constitute a defense to an escape charge; instead, a prisoner's proper avenue of redress is through administrative or judicial channels. As one court stated:

"Since he was under lawful confinement, he had no legal right to resort to self-help as a method to assert his claim with respect to conditions in the prison.

. . . . .

10. *People v. Lovercamp*, 43 Cal.App.3d 823, 118 Cal.Rptr. 110 (1974); *People v. Unger*, 66 Ill.2d 333, 5 Ill.Dec. 848, 362 N.E.2d 319 (1977); *State v. Boleyn*, 328 So.2d 95 (La.1976) (by implication); *People v. Luther*, 394 Mich. 619, 232 N.W.2d 184 (1975); *People v. Harmon*, 53 Mich.App. 482, 220 N.W.2d 212 (1974), *affd.*, 394 Mich. 625, 232 N.W.2d 187 (1975).

11. *State v. Alberigo*, 109 Ariz. 294, 508 P.2d 1156 (1973); *State v. Dyer*, 371 A.2d 1086 (Me.1977); *State v. Green*, 470 S.W.2d 565 (Mo.), *cert. denied*, 405 U.S. 1073, 92 S.Ct. 1491, 31 L.Ed.2d 806 (1971).

12. Appellant's proffered evidence did not entail allegations of physical abuse, but instead, related to actual conditions of imprisonment, *i. e.*, overcrowding and lack of medical care.

. . . The judicial system, as well as the prison administration, has long been recognized as the normal channels for meritorious complaints relating to prison conditions. [The defendant] could have registered his claimed grievances via these accepted avenues of redress." *State v. Dyer*, 371 A.2d 1086, 1090–91 (Me.1977).

█ In reaching this conclusion, it must be recognized that the prison environment is wholly unlike that in the general population at large. A person in the general population, confronted by a situation compelling the commission of a crime, will in most cases have little or no opportunity to secure immediate aid from the proper authorities.[13] In contrast, the prison environment, by definition, is replete with constant supervision by officials whose task is to ensure the safe operation of the prison system. Because of this constant and ready source of available aid, as well as the traditional remedies of habeas corpus, *see Commonwealth ex rel. Bryant v. Hendrick*, 444 Pa. 83, 280 A.2d 110 (1971); *Commonwealth ex rel. Ford v. Jeffes*, 260 Pa.Super. 432, 394 A.2d 1004 (1978), and actions under the federal Civil Rights Act (42 U.S.C. § 1983), *see, e. g., Fox v. Sullivan*, 539 F.2d 1065 (5th Cir. 1976); *Campbell v. Beto*, 460 F.2d 765 (5th Cir. 1972), for contesting oppressive prison conditions, we restrict the defense to all but the most extreme situations.

An example of such a situation was advanced in *People v. Wester*, 237 Cal.App.2d 232, 46 Cal.Rptr. 699 (1965), in which the court hypothesized that if a prisoner was confronted with a choice between accompanying an escaping cell mate,

**13.** *See State v. Ragland*, 4 Conn.Cir. 424, 233 A.2d 698 (1967); *State v. Miller*, 187 So.2d 461 (La.App.1966); *City of Hamilton v. Collier*, 44 Ohio App.2d 419, 339 N.E.2d 851 (1975) (duress when defendant under arrest or detention and acted pursuant to orders of police); *cf. State v. Kearns*, 27 N.C.App. 354, 219 S.E.2d 228 (1975) (no duress when defendant had opportunity to escape); *LaBryer v. State*, 45 Ala.App. 33, 222 So.2d 361, *cert. denied*, 284 Ala. 732, 222 So.2d 366 (Ala.1969) (no duress when accomplice engaged in sodomy on two different occasions and had opportunity to report to police in interim). *But cf. State v. Toscano*, 74 N.J. 421, 378 A.2d 755 (1977) (duress defense available even though defendant had opportunity to report to police but did not out of fear police would be ineffective in affording protection).

or being seriously injured if he chose to remain behind, then duress would be a defense. In such a case, the usual sources of aid would not be immediately available, and confronted with the choice between serious injury or escape, the defendant would properly be excused for choosing the latter course of action. *Accord, State v. Alberigo*, 109 Ariz. 294, 508 P.2d 1156 (1973); *see Commonwealth v. Schwartz*, 251 Pa.Super. 36, 379 A.2d 319 (1977) (by implication). Absent such an extreme situation, we refrain from opening the floodgates to permit Pennsylvania prisoners to raise the defense of duress to a charge of escape.

■ Finally, we emphasize the requirement outlined in the dissent's summary of *People v. Lovercamp*, 43 Cal. App.3d 823, 118 Cal.Rptr. 110 (1974), that a defendant *must* return to official detention as expeditiously as possible after absenting himself from the danger that initially prompted his escape. *Cf. United States v. Chapman*, 455 F.2d 746 (5th Cir. 1972) (duress defense vitiated if defendant forced to escape by other prisoners but then remains at large on own volition).

## VI

■ Appellant's sixth assignment of error relates to the admission into evidence of his prior conviction for first degree murder. As stated, appellant had been found guilty of first degree murder on May 28, 1975, and was incarcerated at the time he escaped on October 1, 1975. In addition to escape, appellant was charged under 18 Pa.C.S. § 6105, which prohibits a person from possessing a firearm if he has previously been convicted of a crime of violence. Under 18 Pa.C.S. § 6102 a crime of violence is defined as including

"[a]ny of the following crimes, or an attempt to commit any of the same, namely: *murder*, rape, aggravated assault, robbery, burglary, entering a building with intent to commit a crime therein, and kidnapping." (emphasis added).

To support a conviction under 18 Pa.C.S. § 6105, it was incumbent upon the Commonwealth to prove beyond a reasonable doubt that appellant had been convicted of one of the crimes enumerated in 18 Pa.C.S. § 6102.[14] *See Commonwealth v. Todd,* 477 Pa. 529, 384 A.2d 1215 (1978).

Cases are legion in which it is held that evidence is admissible if relevant to the matter under inquiry. *E. g. Clark v. Essex Wire Corp.,* 361 Pa. 60, 63 A.2d 35 (1949). Evidence is deemed relevant if it tends to "prove or disprove the matters in issue." *Commonwealth v. Jones,* 355 Pa. 594, 597, 50 A.2d 342, 344 (1947). Instantly, one of the "matters in issue" was whether appellant had been convicted of any crime detailed in 18 Pa.C.S. § 6102. Since the evidence was relevant to resolving this matter, we hold that it was properly admitted as an essential part of the Commonwealth's case.[15]

While appellant concedes that it was necessary to inform the jury that he had been convicted of a crime of violence,

14. Appellant offered to stipulate that the crime for which he had previously been convicted was a crime of violence. However, in *Commonwealth v. Evans,* 465 Pa. 12, 348 A.2d 92 (1975), the supreme court ruled that the Commonwealth was not bound to accept proffered stipulations.

"The general rule is that a party to an adversary court litigation may prove his case by proper evidence and may not be required to accept, in lieu of such evidence, a stipulation as to what it would prove. . . . The Commonwealth has the burden of proving the guilt of the defendant beyond a reasonable doubt; it must be permitted to do that by whatever material it can muster." *Id.,* 465 Pa. at 17, 348 A.2d at 94–95.

Moreover, courts in other jurisdictions have held that the prosecution need not accept similar stipulations when defendants are being tried under analogous statutes. *See United States v. Smith,* 520 F.2d 544 (8th Cir. 1975); *State v. Taylor,* 31 Or.App. 135, 571 P.2d 508 (1977).

15. In its brief, the Commonwealth poses an alternative argument and states that the evidence was also admissible to prove that appellant was under "official detention," a necessary element in the crime of escape. We find this argument to be without merit since the jury was not required to know the exact nature of the prior crime in order to conclude that appellant was under "official detention" at the time he escaped from the Philadelphia General Hospital. *Cf. Commonwealth v. Markle,* 245 Pa.Super. 108, 369 A.2d 317 (1976) (informing jury that prior crime was felony was permissible, but not exact nature or details of crime).

he argues that it was prejudicial to inform them regarding the exact nature of the prior crime. As support for this proposition, appellant cites the the case of *Commonwealth v. Scoggins*, 466 Pa. 355, 353 A.2d 392 (1976).

In *Scoggins*, the defendant was charged, under The Penal Code,[16] with first degree murder,[17] and assault by a life prisoner.[18] To prove that the defendant was incarcerated for a life term at the time he committed the assault, the prosecution introduced evidence that he had previously been convicted of first degree murder. In holding that the court erred in admitting the evidence, the supreme court emphasized that the exact nature of the prior crime was not a necessary element of proof in establishing that the defendant was serving a term of life imprisonment.[19] In contrast, the crime charged in the instant case required the introduction into evidence of the exact nature of the prior crime. While in *Scoggins* the question whether the defendant was serving a life sentence could easily be determined without reference to the prior crime, the instant case required proof

16. Act of June 24, 1939, P.L. 872, §§ 101 *et seq.*, 18 P.S. §§ 4101 *et seq., repealed,* Act of Dec. 6, 1972, P.L. 1482, § 5.

17. *Id.* at § 701, *as amended,* 18 P.S. § 4701.

18. *Id.* at 710.2, *as amended,* 18 P.S. § 4710.2.

19. The court went on to conclude that the admission of the exact nature of the prior crime was not prejudicial in as much as the jury would conclude that the prior crime was of "the most egregious sort" simply by being informed that the defendant had been sentenced to life imprisonment. In light of this necessary prejudice, no additional prejudice resulted from informing the jury that the prior crime had been first degree murder, and the evidence was merely cumulative. *Commonwealth v. Scoggins, supra,* 466 Pa. at 361, 353 A.2d at 395.

Although not raised by appellant, we note that a similar result would pertain to the instant case with respect to informing the jury as to the exact grade of appellant's prior murder conviction. To satisfy the requirements of 18 Pa.C.S. § 6102 the jury need only be informed that appellant had previously been convicted of murder generally. In light of this prejudice, we can perceive of no additional prejudice accruing to appellant by informing the jury regarding the exact degree of the prior murder conviction. *Commonwealth v. Scoggins, supra.*

of the prior crime for the jury to determine whether it was or was not a crime of violence.[20]

■■■■ Moreover, the instant case is distinguishable from *Scoggins* in one material respect. In *Scoggins*, the defendant was being tried for first degree murder and the evidence that was presented established that he had previously been convicted for the same offense. Because the general prohibition against the introduction into evidence of prior crimes is to prevent the jury from concluding that the accused has a propensity for criminal activity by reason of his prior conviction, *see, e. g., Commonwealth v. Allen*, 448 Pa. 177, 292 A.2d 373 (1972); *Commonwealth v. Trowery*, 211 Pa.Super. 171, 235 A.2d 171 (1967), this fear is particularly acute when the jury is informed that the defendant's prior crime was the same as one of the crimes for which he is currently being tried. In contrast to *Scoggins*, the instant charges against appellant did not encompass the same crime for which he had previously been convicted. Therefore, the feared prejudice regarding the jury's belief in appellant's propensity for certain criminal activity was not as great as in *Scoggins*. This, coupled with the fact that the jury was not informed as to the facts of the prior crime, plus the judge's instruction regarding the limited use of the evidence, was sufficient to vitiate any prejudice.

Finally, although no cases have been decided under 18 Pa.C.S. § 6105 or its historic antecedent under The Penal Code, (*see* Act of June 24, 1939, P.L. 872, § 628, *as amended*, 18 P.S. § 4628(d)) cases from other jurisdictions have held

---

**20.** The need to detail to the jury the nature of the prior crime is perhaps underscored by the fact that appellant was acquitted of the charge of possession of a firearm by a former convict, 18 Pa.C.S. § 6105. Since the events charged for that offense were the same as the events for possession of an instrument of crime, 18 Pa.C.S. § 907(a), and possession of a prohibited offensive weapon, 18 Pa.C.S. § 908, with the additional element that appellant had previously been convicted of a crime of violence, it is incongruous that the jury acquitted appellant of the former charge but convicted him of the latter two charges. Either the jury chose to return an inconsistent verdict, *see Commonwealth v. Parrotto*, 189 Pa.Super. 415, 150 A.2d 396 (1959), or the prosecution failed in its proof of an essential element of 18 Pa.C.S. § 6105.

that the exact nature of the prior crime may be introduced as a proper element of proof under statutes similar to that in Pennsylvania.[21] In addition, numerous jurisdictions have statutes prohibiting a former convict from possessing a firearm if the prior crime was a felony, but without the specific Pennsylvania requirement that the prior crime be one of violence. Even in those jurisdictions, evidence of the exact nature of the prior crime has been held admissible as establishing an essential element of the pending offense.[22] Indeed, cases have been reversed when the prosecution failed to establish that the prior crime was one of violence [23] or was a felony,[24] when those factors were essential elements in the proof of the subsequent crime of possession of a firearm.

Therefore, we rule that the evidence was admissible as an essential part of the Commonwealth's proof of 18 Pa.C.S. § 6105.

21. *See English v. State*, 295 Ala. 98, 323 So.2d 728 (1975) (by implication); *Bell v. State*, 47 Ala.App. 516, 257 So.2d 375 (1972); *State v. Robinson*, Del., 251 A.2d 552 (1969); *Powell v. State*, 538 S.W.2d 617 (Tex.Crim.App.), *cert. denied*, 429 U.S. 928, 97 S.Ct. 334, 50 L.Ed.2d 298 (1976).

22. *United States v. Smith*, 520 F.2d 544 (8th Cir. 1975), *cert. denied*, 429 U.S. 925, 97 S.Ct. 328, 50 L.Ed.2d 294 (1976); *United States v. Boyer*, 421 F.2d 842 (9th Cir. 1970); *United States v. Mason*, 68 F.R.D. 619 (D.Md.1975); *People v. Jackson*, 53 Cal.2d 89, 346 P.2d 389 (1959); *People v. Faulkner*, 28 Cal.App.3d 384, 104 Cal.Rptr. 625 (1972); *People v. Willis*, 43 Ill.App.3d 535, 2 Ill.Dec. 409, 357 N.E.2d 576 (1976); *People v. Perry*, 35 Ill.App.3d 50, 340 N.E.2d 585 (1975); *People v. Lampkins*, 28 Ill.App.3d 246, 328 N.E.2d 100 (1975); *State v. Hoover*, 219 Or. 288, 347 P.2d 69 (1959); *State v. Taylor*, 31 Or.App. 135, 571 P.2d 508 (1977).

23. *See Mendoza v. State*, 460 S.W.2d 145 (Tex.Crim.App.1970); *Waffer v. State*, 460 S.W.2d 147 (Tex.Cr.App.1970) (Texas statute did not define crime of violence); *cf. Powell v. State, supra* (adequate proof presented). *See also State v. Robinson, supra* (indictment defective when merely alleges prior crime was one of violence without specifying exact nature of the crime of violence).

24. *Cf. People v. Lampkins, supra* (adequate proof presented). *See also Watson v. State*, 291 So.2d 741 (Miss.1974) (conviction reversed when indictment merely alleged prior crime was a felony without specifying the exact nature of the felony).

## VII

Finally, we are confronted with appellant's contention that the court below erred in permitting the prosecution to amend the information to allege a violation of 18 Pa.C.S. § 6105, "[f]ormer convict not to own a firearm." Appellant had initially been charged with possession of a firearm by a former convict (18 Pa.C.S. § 6105), and carrying a firearm without a license (18 Pa.C.S. § 6106). At a trial in the Philadelphia Municipal Court, appellant was found guilty under 18 Pa.C.S. § 6105, while the charge under 18 Pa.C.S. § 6106 had been dismissed earlier. Appellant then appealed for a trial de novo in the Philadelphia Court of Common Pleas. In drawing the information, the prosecutor inadvertently charged appellant with violating 18 Pa.C.S. § 6106 and § 6108 (carrying a firearm in public). During pre-trial motions, the Commonwealth moved to amend the information to delete the charges under § 6106 and § 6108 and to substitute the offense for which appellant had been convicted in the municipal court, § 6105. Appellant contends that this substitution was impermissible under Pa.R.Crim.P. 229. We disagree.

Pa.R.Crim.P. 229 provides that an information may be amended if

"there is a defect in form, the description of the offense, the description of any person or any property, or the date charged, provided the information as amended *does not charge an additional or different offense.*" (emphasis added).

*See also* Act of March 31, 1860, P.L. 427, §§ 12, 13, 19 P.S. §§ 432, 433. Appellant alleges that the deletion of the charges under 18 Pa.C.S. § 6106 and § 6108 and the substitution of the charge under 18 Pa.C.S. § 6105 entails the charging of an "additional or different offense." While appellant's contention is supported by a superficial reading of Rule 229, it is unsubstantiated by the Pennsylvania precedents interpreting that provision.

The purpose of Rule 229 [25] is to insure that a defendant is fully appraised of the charges against him, and to avoid prejudice by prohibiting the last minute addition of alleged criminal acts of which the defendant is uninformed. *See Commonwealth v. Jones*, 250 Pa.Super. 471, 378 A.2d 1245 (1977); *Commonwealth v. King*, 227 Pa.Super. 168, 323 A.2d 260 (1974). In effecting this purpose, the courts of this Commonwealth employ the test of whether the crimes specified in the original indictment or information involve the same basic elements and evolved out of the same factual situation as the crimes specified in the amended indictment or information. If so, then the defendant is deemed to have been placed on notice regarding his alleged criminal conduct.[26] If, however, the amended provision alleges a different set of events,[27] or the elements or defenses to the amended crime are materially different from the elements or defenses to the crime originally charged, such that the

**25.** While the cases discussed *infra* are interpretive of Pa.R.Crim.P. 220, they may be utilized in determining the extent of Rule 229. The provisions of the two rules are identical, and differ only in that Rule 220 is applicable to indictments while Rule 229 applies to informations.

**26.** *Cf. Commonwealth v. Boone*, 450 Pa. 357, 301 A.2d 699 (1973) (charge of murder amended to include voluntary manslaughter, a lesser included offense); *Commonwealth v. Fowler*, 259 Pa.Super. 314, 393 A.2d 844 (1978) (charge of conspiracy to commit robbery and theft amended to include conspiracy to commit aggravated assault); *Commonwealth v. Coles*, 226 Pa.Super. 488, 313 A.2d 329 (1974) (charge of larceny of automobile amended to include larceny of tape recorder and tapes in the auto).

**27.** *Cf. Commonwealth v. Swint*, 465 Pa. 450, 350 A.2d 851 (1976) (charge of possession of firearm at time of arrest different from original charge of possession at time of murder when the arrest occurred twenty-nine days after the original murder). *But cf. Commonwealth v. King*, 227 Pa.Super. 168, 323 A.2d 260 (1974) (amendment to charge drug sale at 1:00 p. m. permissible even though evidence at preliminary hearing informed defendant he would have to defend against an alleged sale at 3:00 p. m. or 7:00 p. m. of the same day).

defendant would be prejudiced by the change,[28] then the amendment is not permitted.

Instantly, appellant was informed at the municipal court level of both the charge and the events giving rise to the offense of possession of a firearm by a former convict, 18 Pa.C.S. § 6105. His defense at that time, and at the trial de novo in the court of common pleas, was that he was not in possession of the weapon found on the dresser, since mere proximity to the weapon was insufficient to establish possession, and the weapon may have belonged to others who had equal access to the bedroom. At no time did appellant challenge his status as a former convict, the only additional element in the amended offense that was not encompassed in the offenses originally charged. Moreover, the facts alleged in the information charging appellant with the offenses under 18 Pa.C.S. § 6106 and § 6108 were not changed when those charges were deleted and 18 Pa.C.S. § 6105 was substituted in their stead. Accordingly, because appellant was fully appraised of the charges and the events concerning § 6105 at the municipal court,[29] and because his defense was unaffected by whatever "label" was attached to those events, we can perceive of no prejudice to appellant by permitting the amendment.

Judgment of sentence affirmed.

SPAETH, J. files a dissenting opinion.

JACOBS and WATKINS, former President Judges, and HOFFMAN, J., did not participate in the consideration or decision of this case.

28. *Commonwealth v. Bruce*, 230 Pa.Super. 507, 326 A.2d 628 (1974) (amendment to allege burglary with intent to commit murder different from burglary with intent to commit larceny since elements of offenses and defenses are different).

29. In *Commonwealth v. Nelson*, 230 Pa.Super. 89, 326 A.2d 598 (1974), we held that the municipal court proceedings serve to apprise a defendant of the nature of the charges, and in that respect, obviate the need to conduct a preliminary hearing on those charges.

214

SPAETH, Judge, dissenting:

This is an appeal from judgments of sentence for escape, possession of implements of escape, possession of an instrument of crime generally, and carrying a prohibited offensive weapon.[1] The majority opinion and I are in accord on four of appellant's arguments, which I discuss below. We differ on two others; therefore, I dissent.

On May 28, 1975, appellant was convicted of first degree murder. On October 1, 1975, he escaped from the detention room of Philadelphia General Hospital. He was recaptured when police with an arrest warrant forcibly entered a private apartment and discovered him hiding under a child's crib. In the course of this recapture the police seized a revolver that they saw on top of a dresser a few feet from the crib.

-1-

Appellant first argues that the lower court erred in not granting his motion to suppress the revolver.

At the suppression hearing the Commonwealth offered testimony to this effect: that a woman named Jacqueline Keim told a man named Carmen Sperduto that appellant was at her apartment; that Sperduto saw a newspaper item about appellant's escape and telephoned the police, telling them that he had seen appellant and might know where appellant was; and that it was on the basis of this tip that the police and Sperduto went to the apartment. Appellant argues that this testimony was insufficient to show that the police had probable cause to believe that he would be in the apartment;[2] the revolver was therefore the fruit of an unlawful entry.

1. The Crimes Code, Act of Dec. 6, 1972, P.L. 1482, No. 334, 18 Pa.C.S.A. §§ 5121, 5122, 907(a), and 908, respectively.

2. Sperduto pointed out the correct apartment, but was not present during the recapture of appellant. Instead he went with some officers to police headquarters where he gave a long statement telling where he had seen appellant and how he had learned where appellant was staying. This statement, however, may not be considered in

■ While it is not necessary for the police to obtain a *search* warrant to execute an *arrest* warrant, *United States v. Cravero*, 545 F.2d 406 (5th Cir. 1977); [3] *see United States v. Rabinowitz*, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950); *Agnello v. United States*, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145 (1925), we agree with appellant that probable cause to believe that the subject of the arrest warrant is on the premises is nonetheless required before the police may enter to execute the arrest warrant. However, before we may consider appellant's argument that this requirement was not satisfied, we must discuss whether appellant has standing to make the argument.

■ Constitutional rights under the fourth amendment are personal in nature. *Brown v. United States*, 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973); *Commonwealth v. Treftz*, 465 Pa. 614, 351 A.2d 265 (1976). A defendant who is aggrieved, not by the search itself, but solely by the introduction of damaging evidence, will be denied standing. *Alderman v. United States*, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969); *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960); *Commonwealth v. Treftz, supra*. Four "personal" interests have been identified that a defendant may assert in order to establish standing:

(1) his presence on the premises at the time of the search and seizure; (2) a possessory interest in the evidence improperly seized; (3) that the offense charged include as an essential element of the prosecution's case, the element

deciding whether the police had probable cause to enter the apartment. *Cf. Commonwealth v. Wilds*, 240 Pa.Super. 278, 362 A.2d 273 (1976); Pa.R.Crim.P. 2003 (magistrate in issuing search warrant may not consider evidence outside of the affidavits).

**3.** In *United States v. Cravero, supra*, the court suggested that one reason a search warrant was not required was that

there is no need to particularize the search—the arrest warrant has already done that. There is not the same danger of the "general writ" which is the reason for requiring that a search warrant described what specific items police are allowed to search for. 545 F.2d at 421 n. 1.

of possession at the time of the contested search and seizure; or, (4) a proprietory [*sic*] or possessory interest in the searched premises.

*Commonwealth v. Treftz, supra*, 465 Pa. at 621–22, 351 A.2d at 268 (footnotes omitted).

Thus is may be seen that if the police had improperly entered the apartment in order to search it, and had found the revolver, appellant would have had standing to move to suppress the revolver as evidence, his standing being based on the fact of "his presence on the premises at the time of the search and seizure."

This said, we must ask whether the result should be different where, as here, the police do not enter to search the premises but to make an arrest.

We believe the result should be different. The reason a search is forbidden is to protect someone's right of privacy. When the police set out to make a search, they intend to invade someone's right of privacy. Here, when the police entered the apartment to look for appellant, they did not intend to invade appellant's right of privacy but, if they found him, to arrest him. Nor, in fact, did the police invade appellant's right of privacy. To be sure, they invaded his right of liberty, but they had proper authority to do that, in the form of the arrest warrant. The invasion of appellant's right of liberty, however, was not an invasion of his right of privacy; a fugitive does not have a right of privacy if by "privacy" is meant a right to hide from, or to resist, proper arrest.[4]

---

4. This is not to say that the subject of an arrest has *no* right of privacy. While the police may search him incident to his arrest, that search is of limited scope. *See Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). Here, however, the seizure of the revolver did not exceed those limits, which were held in *Chimel* to include "the area into which an arrestee might reach in order to grab a weapon . . . ." 395 U.S. at 763, 89 S.Ct. at 2040. Alternatively it might be said that although the police made a seizure, they made no search, for the revolver was in plain view. *See Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).

Since appellant may not attack the lawfulness of the entry to arrest him,[5] the revolver which was the proper subject of a search incident to arrest, and was in plain view, was properly held admissible.[6]

-2-

Appellant next argues that his motion for a demurrer as to the firearms charges should have been granted because the Commonwealth failed to prove possession of the revolver seized at the time of his arrest.

In deciding the sufficiency of evidence, we must first accept as true all the evidence upon which the trier of fact could properly have based the verdict, and then ask whether that evidence, with all reasonable inferences from

5. In *United States v. Cravero*, 545 F.2d 406 (5th Cir. 1976), *cert. denied*, 429 U.S. 1100, 97 S.Ct. 1123, 51 L.Ed.2d 549 (1977), the Court of Appeals reached the same result as we have here although without explicitly relying on the doctrine of standing. It initially held that to execute an arrest warrant in the home of a third party the police need a search warrant (in *United States v. Cravero*, 545 F.2d 406 (5th Cir. 1977), the court rescinded this holding), but went on to say that, although the entry was unlawful, the arrests of the appellants were valid:

> The arrest warrants represent judicial sanction of the deprivations of the suspects' liberties. Possession of the warrants was a completely self-validating justification for the arrests regardless of the circumstances under which the police reached the location where they served the warrants. To hold otherwise would mean that a suspected felon could claim what amounts to temporary sanctuary in the home of another and would require us to contemplate with equanimity the prospect of a section 1983 suit by him against the officers who arrested him on a valid warrant, which seems self-evidently absurd. Thus, the arrests are valid, though the method of effecting them be not.
>
> 545 F.2d at 417 (footnote omitted).

6. Appellant has argued that the entry by the police was unlawful because the police failed to announce their purpose. However, standing to make this argument also depends upon proof of an invasion of one's right of privacy.

Although appellee was, in the most literal sense, a "fugitive," our discussion is not limited to escapees but applies to anyone for whom a warrant of arrest has been issued. As for the tenants of the apartment, their right of privacy stands untouched; if the police had found evidence and attempted to use it against the apartment tenants, they would certainly have had standing to argue that the police had no probable cause to believe that appellant was there.

▮▮▮▮▮▮▮▮▮▮▮▮▮

it, was sufficient to prove guilt beyond a reasonable doubt. *Commonwealth v. Fortune*, 456 Pa. 365, 367, 318 A.2d 327, 328 (1974); *Commonwealth v. Petrisko*, 442 Pa. 575, 579–89, 275 A.2d 46, 49 (1971). Guilt must be proved and not conjectured. *Commonwealth v. Wilson*, 225 Pa.Super. 513, 312 A.2d 430 (1973). However, guilt may be established by circumstantial evidence. *Commonwealth v. Cimaszewski*, 447 Pa. 141, 144, 288 A.2d 805, 806 (1972).

▮▮▮▮ Here, appellant correctly argues that evidence of his mere proximity to the revolver would be insufficient to prove possession. *Commonwealth v. Tirpak*, 441 Pa. 534, 272 A.2d 476 (1971). Furthermore, the evidence that the apartment was not appellant's might suggest that others had access to the revolver, which would argue against appellant's possession of it. *Commonwealth v. Davis*, 444 Pa. 11, 280 A.2d 119 (1971). However, Sperduto testified that two days before the arrest, that is, on the day appellant escaped, he saw a gun drop to the floor from inside appellant's trousers. He further testified that it was a black, .22 caliber gun with a white handle—as was the revolver—and that he thought it and the revolver were the same. Given this testimony, the jury was justified in finding that appellant possessed the revolver.

-3-

▮▮▮▮▮ Appellant next argues that his conviction for possession of the revolver should be reversed because he was convicted under 18 Pa.C.S.A. § 907(a) instead of § 907(b); in appellant's view, although § 907(b) includes possession of firearms, § 907(a) does not. However, this court decided otherwise in *Commonwealth v. McNear*, 238 Pa.Super. 177, 353 A.2d 39 (1976).[7]

7. Furthermore, if one were to accept the analysis of the author of this opinion (who dissented in *McNear, supra* ), still the loaded revolver in possession of appellant, an escaped convict, would come under § 907(a) as something "commonly used for criminal purposes and possessed by the actor under circumstances not manifestly appropriate for lawful uses it may have," and therefore an "instrument of

-4-

■ Appellant next argues that the Commonwealth failed to prove one of the elements of the crime of escape. Appellant was originally tried on the escape charge in the Municipal Court of Philadelphia, the jurisdiction of which is limited to misdemeanors. When appellant appealed for a trial de novo in the Court of Common Pleas, he again was tried for escape as a misdemeanor. The Crimes Code, *supra*, 18 C.P.S.A. § 5121, provides as follows:

> (d) Grading.—
>
>> (1) An offense under this section is a felony of the third degree where:
>>
>>> (i) the actor was under arrest for or detained on a charge of felony or following conviction of crime;
>>>
>>> . . . . .
>>
>> (2) Otherwise an offense under this section is a misdemeanor of the second degree.

Appellant argues that the Commonwealth failed to prove the crime of escape *as a misdemeanor* because it failed to prove that he was detained for something *other* than "a charge of felony or following conviction of a crime," 18 Pa.C.S.A. § 5121(d)(1)(i).

The difficulty with this argument is that the elements of the crime of escape are set out, not in § 5121(d), but in § 5121(a):

> (a) Escape.—A person commits an offense if he unlawfully removes himself from official detention or fails to

crime" under § 907(c)(2). *See Commonwealth v. Goosby*, 251 Pa.Super. 326, 333, 380 A.2d 802, 806 (SPAETH, J., concurring).

It may also be mentioned at this point that appellant makes two other arguments regarding his convictions incident to possession of the revolver. First, he argues that the Commonwealth did not prove that he had the intent to employ the revolver criminally, as required by § 907(a). Second, he argues that we should vacate his conviction under 18 Pa.C.S.A. § 908, which bars possession of prohibited offensive weapons, for in *Commonwealth v. McHarris*, 246 Pa.Super. 488, 371 A.2d 941 (1977), this court held that revolvers were not prohibited offensive weapons. We may not consider these arguments because appellant failed to include them in his post-verdict motions. *Commonwealth v. Blair*, 460 Pa. 31, 331 A.2d 213 (1975).

return to official detention following temporary leave granted for a specific purpose or limited period. The Commonwealth was required to prove, and did prove, that appellant unlawfully removed himself from official detention. The grading section, on which appellant relies, does not add or subtract to this definition of the crime but only defines its severity, as a felony or misdemeanor. *Compare Commonwealth v. McKennion*, 235 Pa.Super. 160, 340 A.2d 889 (1975) (for theft offenses, under the Crimes Code, *supra*, § 3903, valuation of stolen goods is not element of crime, but controls grading of offense only (HOFFMAN and SPAETH, JJ., dissented)). Furthermore, it would be absurd to say that the Legislature, by *requiring* proof of conviction of a crime before an escape could be graded as a felony, intended by that to *forbid* proof of conviction of a crime before an escape could be graded as a misdemeanor. So long as appellant was not deprived of adequate notice to prepare his defense—and appellant does not argue that he was so deprived—he was fortunate to have been charged with and convicted of a less serious offense than he might have been. *Cf. Commonwealth v. Farmer*, 244 Pa.Super. 334, 344, 368 A.2d 748, 753 (1976) (indictment charging attempted theft of automobile fairly put defendant on notice of charges against him; proper to convict him of attempted theft of automobile's contents, since any defense to first charge would have been identical to any defense to second charge).

-5-

Appellant next argues that the lower court erred in not permitting him to introduce evidence of the conditions of his confinement in prison as a defense to the charge of escape. Here, the majority and I differ.

As the majority notes, the law is clear that even if a prisoner's conviction would be reversed or set aside on appeal or writ of habeas corpus, he has no right to escape. It does not necessarily follow from this law that duress is not available as a defense to a charge of escape. In *People*

*v. Lovercamp,* 43 Cal.App.3d 823, 118 Cal.Rptr. 110 (1974), the court set out five factors to be considered in deciding whether duress had been shown: (1) a specific threat of death, forcible sexual attack, or substantial bodily injury in the immediate future; (2) lack of time for complaint or circumstances indicating that a complaint would be futile; (3) no time or opportunity to resort to the courts; (4) absence of force or violence toward prison personnel in making the escape; and (5) an immediate report to the proper authorities once the prisoner has attained a position of safety from the immediate threat. This decision has been widely followed, *see, e. g., United States v. Michelson,* 559 F.2d 567 (9th Cir. 1977); *Johnson v. State,* 379 A.2d 1129 (Del.Supr., 1977); *State v. Worley,* 18 Cr.L. 2310 (S.C.Sup. Ct., filed Dec. 4, 1975), although some courts have held that the factors enumerated are not prerequisites but rather go to the weight of the testimony about duress, *see Esquibel v. State,* 91 N.M. 498, 576 P.2d 1129, 23 Cr.L. 2137 (1978); *People v. Unger,* 66 Ill.2d 333, 5 Ill.Dec. 848, 362 N.E.2d 319 (1977).

Recently in *United States v. Bailey,* 585 F.2d 1087 (1978), the Court of Appeals for the District of Columbia has had the occasion to consider the defense of duress. After examining such cases as *Lovercamp* and *Michelson* at length, a majority of the court concluded that proof of prison conditions should be permitted if relevant to the "intent to avoid confinement." The majority drew a distinction between, on the one hand, a prisoner who escaped "to see his mother who is ill", and, on the other, a prisoner who escaped "to avoid conditions that are not normal aspects of 'confinement'— such as beatings in reprisal for testimony in a trial, failure to provide essential medical care, or homosexual attacks . . . ." 585 F.2d at 1128. In the latter case, said the majority, "the intent element of the crime of escape may not be satisfied," *id.*

I should not decide which of these several analyses is the most persuasive, for here appellant did not offer enough evidence to make out a prima facie case under any of them.

Counsel's only offer was general, to show that living conditions in the prison were "unbearable", N.T. at 292; and although counsel said he had subpoenaed appellant's medical records, he did not say what the records would show. On this offer, it was not error to refuse to receive the evidence.

The majority recognizes that the extent of the duress defense is "not directly presented in the instant case," Majority slip opinion at 1171, yet goes on to say, "we hold that . . .." I submit that the majority's discussion is not a holding but mere *dictum*.

–6–

Appellant finally argues that he was unfairly prejudiced by the introduction of evidence that the crime he had been convicted of was first degree murder. Here, too, the majority and I differ.

The Commonwealth introduced the evidence that appellant had been convicted of murder in order to prove escape, which, as just discussed, requires proof that the defendant was under official detention, and also in order to prove possession of a firearm by a former felon, in violation of the Crimes Code, *supra.* 18 Pa.C.S.A. § 6105 (appellant was acquitted of this charge).

At trial, objecting to this evidence, appellant's counsel argued that the Commonwealth had to prove only that appellant had committed *a* crime (for escape) and a crime of *violence* (for possession of a firearm by a felon). It was unnecessary, counsel argued, to prove exactly what the crime of violence was; further, counsel offered to stipulate that the crime appellant had been convicted of was a crime of violence.

I acknowledge that elsewhere the law is as the majority says—that the Commonwealth could insist upon proving that the crime of violence in question was first degree murder. Perhaps we should adopt—the majority does adopt—this view. It seems to me, however, that we should remember the principle that otherwise admissible evidence may be inadmissible if it is not essential but cumulative, and

so prejudicial as to be likely to make it difficult for the jury to decide the case in an unimpassioned manner. *Commonwealth v. Ulatoski,* 472 Pa. 53, 371 A.2d 186 (1976); Fed.R. Evid. 403; McCormick, *Evidence,* § 185 at 438–40 (Cleary Ed., 1972). This principle was recognized and applied in *Commonwealth v. Scoggins,* 466 Pa. 355, 353 A.2d 392 (1976). There the defendant had been charged with assault by a life prisoner. He argued that while proof of that crime necessarily involved exposing the jury to the fact that he was serving a life sentence—and therefore obviously had been convicted of a crime—it was unnecessary for the jury to be told that the crime was first degree murder. The Supreme Court agreed with this argument, holding that the admission of the evidence that the crime was first degree murder had been error. However, reasoning that the jury presumably knew that a life sentence involved a "crime of the most egregious sort," 466 Pa. at 361, 353 A.2d at 395, the Court held the evidence was merely cumulative and its admission harmless error.

The same cannot be said here. To be sure, as appellant and counsel recognized, the jury necessarily had to be exposed to the fact that appellant had committed a crime of violence.[8] However, the phrase "crimes of violence" comprises crimes of a wide range of gravity, *e. g.,* in addition to murder, robbery, or burglary, or "entering a building with intent to commit a crime therein." *See* 18 Pa.C.S.A. § 6102. It is clear that the jury here might well have thought worse of appellant, knowing that he had committed first degree murder, than if it had simply, but accurately, been informed that he had committed a "crime of violence." Thus the evidence that appellant had committed murder was not cumulative, as it was in *Commonwealth v. Scoggins, supra.* The majority says that *Scoggins* is distinguishable because "the crime charged in the instant case required the introduc-

---

**8.** Appellant argues that this necessity should not have arisen because the charge of a felon possessing a firearm was improperly before the jury in the first instance as the result of an impermissible amendment to the information. However, I need not consider this argument.

tion of the exact nature of the prior crime," Slip opinion at 1173; but that begs the question, which is whether evidence "of the exact nature of the prior crime" was "required" here. The majority also says that there was a greater danger of prejudice in *Scoggins* than here, Slip opinion at 1174, but putting myself in the position of a juror, I come to the opposite conclusion.

There remains, however, the question whether the evidence was harmless, *i. e.,* whether it prejudiced appellant by exposing him to the danger of "the tendency of a normal juror to accept testimony of prior convictions as a basis for finding a predisposition to commit the crime charged." *Commonwealth v. Scoggins, supra,* 466 Pa. at 360, 353 A.2d at 395. As to the conviction of escape, I find that appellant was not prejudiced. As indicated by the foregoing discussion, appellant had no defense to the charge (except the claim of "duress"); his attorney admitted as much. N.T. at 292-93. I should therefore affirm this conviction. However, as to the convictions of possession of implements of escape, possession of an instrument of crime generally, and carrying a prohibited offensive weapon, I find that appellant was prejudiced, and that these convictions should be vacated. Appellant denied that he was the one who removed the bars from the window at Philadelphia General Hospital (although he admitted leaving through that window); he denied possessing the hacksaw blade that a witness said he had; he denied ever having a revolver, although Sperduto testified he saw one in appellant's possession. Thus appellant's credibility was involved, and critically involved, for while there was no question that appellant was guilty of escape, still, if the jury believed his testimony regarding the bars, hacksaw blade, and revolver, it could otherwise acquit him. In these circumstances I cannot say that the evidence that appellant was a first degree murderer was harmless beyond a reasonable doubt. *Commonwealth v. Story,* 476 Pa. 391, 383 A.2d 155 (1978). For this reason, I should remand for a new trial.